# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS CENTER FOR ) <br> REPRODUCTIVE HEALTH, et al., ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HERBERT H. SLATERY, et al., ) <br> ) <br>    Defendants. ) | NO. 3:20-cv-00501 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## **TEMPORARY RESTRAINING ORDER**

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 6).[1] Plaintiffs request the Court issue a temporary restraining order prohibiting the enforcement of two sets of bans on pre-viability abortions recently enacted by the Tennessee General Assembly in House Bill 2263/Senate Bill 2196 ("the Act"). Plaintiffs have now filed a notice with the Court indicating the Governor has signed the legislation, and therefore, the Motion is ripe for decision.

Plaintiffs argue the bans are unconstitutional based primarily on the Supreme Court's decisions in *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) and *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). In *Casey,* the Supreme Court abandoned the trimester framework of *Roe,* while reaffirming *Roe's* "essential holding:"

---

[1] Plaintiffs' Motion is supported by a Complaint (Doc. No. 1), Memorandum (Doc. No. 7), and the Declarations of Kimberly Looney, M.D., Mary Norton, M.D., Nikki Zite, M.D., Corinne Rovetti, FNP, APRN-BC, Rebecca Terrell, and Melissa Grant (Doc. No. 8).

> First is a recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health. And third is the principle that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. These principles do not contradict one another; and we adhere to each.

505 U.S. at 846. The Court balanced these interests by employing an "undue burden analysis:" "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." 505 U.S. at 878; *see also June Med. Servs. L. L. C. v. Russo,* 2020 WL 3492640 (June 29, 2020) (applying *Casey)*; *Whole Woman's Health v. Hellerstedt,* ___ U.S. ___, 136 S. Ct. 2292, 2309, 195 L. Ed. 2d 665 (2016) (applying *Casey*).

The Court defined viability as "the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb. . ." *Casey,* 505 U.S. at 870. Because viability may differ with each pregnancy, the Court has held that "neither the legislature nor the courts may proclaim one of the elements entering into the ascertainment of viability—be it weeks of gestation or fetal weight or any other single factor—as the determinant of when the State has a compelling interest in the life or health of the fetus." *Colautti v. Franklin*, 439 U.S. 379, 388–89, 99 S. Ct. 675, 682, 58 L. Ed. 2d 596 (1979).

The Act's two bans challenged by Plaintiffs are to be codified at Tennessee Code Annotated Sections 39-15-216 and 39-15-217. Section 216(c)(1) provides that a person who performs or induces an abortion "upon a pregnant woman whose unborn child has a fetal heartbeat" commits a Class C felony. Section 216(c)(2) criminalizes abortions when the "unborn child is six weeks gestational age or older" unless there is no "fetal heartbeat." Sections (c)(3)

through (12) criminalize the provision of an abortion at various intervals from eight weeks through 24 weeks gestational age. Section 216(h) contemplates the severability of any provision found to be unenforceable, leaving any enforceable bans intact.

Sections 217(b) and (c) provide that a person who performs or induces an abortion upon a pregnant woman "if the person knows that the woman is seeking the abortion because of the sex of the unborn child" or the "race of the unborn child" commits a Class C felony. Section 217(d) criminalizes the provision of an abortion "if the person knows that the woman is seeking the abortion because of a prenatal diagnosis, test, or screening indicating Down syndrome or the potential for Down syndrome in the unborn child."

Because Tennessee law currently prohibits abortion after viability, Tenn. Code Ann. § 39-15-211(b)(1), the prohibitions in Sections 216 and 217 apply to pre-viability abortions.[2] Plaintiffs take the position that viability normally occurs no earlier than 23 weeks from the pregnant person's last menstrual period ("LMP"). *See* Declaration of Mary Norton, M.D. ¶¶ 21-22 (Doc. No. 8-2). Plaintiffs also allege that cardiac activity is generally detectible via ultrasound at approximately 6 weeks LMP. (Doc. No. 1 ¶ 69).

The Eighth Circuit considered a North Dakota law similar to Section 216 – one which prohibited abortions of unborn children who possess a detectable heartbeat – and held the law was unconstitutional under binding Supreme Court precedent:

> Here, because the parties do not dispute that fetal heartbeats are detectable at about 6 weeks, it is clear that H.B. 1456 generally prohibits abortions after that point in a pregnancy. Whether such a prohibition is permissible under the principles we accept as controlling in this case depends on when viability occurs: if viability occurs at about 24 weeks, as the plaintiffs maintain, then H.B. 1456 impermissibly prohibits women from making the ultimate decision to terminate

---

[2] Tennessee law currently requires individual assessments of viability, Tenn. Code Ann. § 39-15-212, but creates a rebuttal presumption of viability at 24 weeks gestational age. Tenn. Code Ann. § 39-15-211(b)(5).

3

> their pregnancies; but if viability occurs at conception, as the State argues, then no impermissible prohibition ensues.
>
> Just as we are bound by the Supreme Court's assumption of *Casey's* principles, we are also bound by the Court's statement that viability is the time 'when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support.' *Colautti v. Franklin,* 439 U.S. 379, 388, 99 S. Ct. 675, 58 L.Ed.2d 596 (1979); *see also Casey,* 505 U.S. at 870, 112 S. Ct. 2791 (plurality opinion) ('[T]he concept of viability ... is the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb....'); *Roe,* 410 U.S. at 160, 163, 93 S. Ct. 705 (stating that a fetus becomes viable when it is 'potentially able to live outside the mother's womb, albeit with artificial aid' and that viability is the point at which the fetus 'presumably has the capability of meaningful life outside the mother's womb').
>
> \* \* \*
>
> Because there is no genuine dispute that H.B. 1456 generally prohibits abortions before viability—as the Supreme Court has defined that concept—and because we are bound by Supreme Court precedent holding that states may not prohibit pre-viability abortions, we must affirm the district court's grant of summary judgment to the plaintiffs.

*MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 772–73 (8th Cir. 2015). More recently, the Fifth Circuit enjoined the enforcement of a Mississippi law criminalizing abortions after the detection of a fetal heartbeat. *Jackson Women's Health Org. v. Dobbs,* 951 F.3d 246, 248 (5th Cir. 2020); *see also SisterSong Women of Color Reprod. Justice Collective v. Kemp,* 410 F. Supp. 3d 1327, 1343-46 (N.D. Ga. 2019) (enjoining Georgia law prohibiting abortions after detection of fetal heartbeat); *Edwards v. Beck,* 786 F.3d 1113, 1116-17 (8th Cir. 2015) (affirming permanent injunction against enforcement of Arkansas statute prohibiting abortions if heartbeat was detected and gestational period was 12 weeks or more).

The Seventh Circuit considered an Indiana law similar to Section 217 – one which prohibited abortions for certain reasons, such as race, sex, color, national origin, ancestry, or Down syndrome – and held it was also unconstitutional under binding Supreme Court precedent:

4

> The Court in *Casey* elaborated that these sort of regulations prior to viability 'must be calculated to *inform* the women's free choice, *not hinder it*.' *Id.* (emphasis added). Thus, while the State may enact measures to inform a woman's choice to terminate her pregnancy, the State may not prohibit the woman from making 'the ultimate decision.' *Id.* at 878–79, 112 S. Ct. 2791.
>
> The non-discrimination provisions clearly violate this well-established Supreme Court precedent, and are therefore, unconstitutional. The provisions prohibit abortions prior to viability if the abortion is sought for a particular purpose. These provisions are far greater than a substantial obstacle; they are absolute prohibitions on abortions prior to viability which the Supreme Court has clearly held cannot be imposed by the State. *Id.* at 879, 112 S. Ct. 2791 ('a State *may not prohibit* any woman from making the ultimate decision to terminate her pregnancy before viability.') (emphasis added). We are bound to follow that Supreme Court precedent. *See Karlin v. Foust*, 188 F.3d 446, 495 (7th Cir. 1999). Unsurprisingly, other circuits who have dealt with prohibitions prior to viability have had no trouble striking them down. *See, e.g.*, *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015) (statute prohibiting pre-viable abortions where the fetus has a detectable heartbeat); *McCormack v. Herzog*, 788 F.3d 1017, 1029 (9th Cir. 2015) (statute prohibiting pre-viable abortions where fetus is at least 20 weeks gestational age); *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) (statute prohibiting pre-viable abortions after twelve weeks where the fetus has a detectable heartbeat).

*Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health*, 888 F.3d 300, 306, 2018 WL 1870566 (7th Cir.), *reh'g en banc granted, judgment vacated,* 727 Fed. Appx. 208, 2018 WL 2771362 (7th Cir. 2018), *vacated,* 917 F.3d 532, 2018 WL 3655854 (7th Cir. 2018), and *opinion reinstated,* 917 F.3d 532, 2018 WL 3655854 (7th Cir. 2018) (emphasis in original); *see also Little Rock Family Planning Srvcs. v. Rutledge,* 397 F. Supp. 3d 1213, 1271-72 (E.D. Ark. 2019) (enjoining enforcement of Arkansas statute prohibiting abortion based on belief that unborn child has Down syndrome).[3]

In determining whether to issue a temporary restraining order ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood

---

[3] The Sixth Circuit has not directly addressed a similar law. *See Preterm-Cleveland v. Himes*, 940 F.3d 318, 320 (6th Cir.), *reh'g en banc granted, opinion vacated,* 944 F.3d 630 (6th Cir. 2019) (involving challenge to Ohio law prohibiting abortion provider from performing an abortion with the knowledge that the decision to abort arises from a diagnosis or indication that the unborn child has Down Syndrome).

5

of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).

A TRO may be issued without notice to the adverse party. Fed. R. Civ. P. 65((b)(1). The purpose of a TRO is to preserve the *status quo* and prevent irreparable harm until an opportunity for a full review of the facts and legal arguments at a preliminary injunction hearing. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L.Ed.2d 435 (1974).

Defendants filed a 36-page Response (Doc. No. 27) to Plaintiffs' request for a TRO, along with over 200 pages of declarations and exhibits. The filing does not present a basis for denying Plaintiffs' request to maintain the *status quo* and prevent irreparable harm, however, until the Court can fully consider Defendants' arguments and evidentiary support at a preliminary injunction hearing.

Based on Plaintiffs' filings, and for the reasons set forth herein, the request for a temporary restraining order is **GRANTED** on the terms and conditions stated herein. The Court finds as follows:

(1) Plaintiffs have demonstrated a strong or substantial likelihood of success on the merits of their claims that the restrictions in Sections 39-15-216 and 39-15-217 are unconstitutional under current law as explained above. Like the Seventh, Eighth, and Fifth Circuits, this Court is bound by the Supreme Court holdings prohibiting undue burdens on the availability of pre-viability abortions.

6

(2) Plaintiffs have demonstrated they will suffer immediate and irreparable injury, harm, loss, or damage if injunctive relief is not granted pending a preliminary injunction hearing. The Act will immediately impact patients seeking abortions and imposes criminal sanctions on abortion providers. The time-sensitive nature of the procedure also weighs in favor of injunctive relief pending a preliminary injunction hearing.

(3) The balance of relative harms among the parties weighs in favor of Plaintiffs and against Defendants. Enjoining enforcement of Sections 39-15-216 and 39-15-217 will preserve the status quo pending a preliminary injunction hearing.

(4) The public interest will not be harmed by preserving the status quo pending a preliminary injunction hearing.

It is, therefore, ORDERED that, pursuant to Federal Rule of Civil Procedure 65: Defendants, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them, are hereby enjoined and restrained from enforcing Sections 39-15-216 and 39-15-217, pending further order of the Court.

Given that Defendants are unlikely to incur damages or costs from this injunctive relief, Plaintiffs are excused from posting security as a condition of obtaining injunctive relief.

This TRO is effective upon its issuance on July 13, 2020, at 12:00 noon, and expires on July 27, 2020, at 12:00 noon, absent further order of the Court. Plaintiffs' request for a preliminary injunction will be considered at a hearing on July 24, 2020, at 10:00 a.m., as set by separate order.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE