**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

MEMPHIS CENTER FOR REPRODUCTIVE
HEALTH, on behalf of itself, its physicians and
staff, and its patients; PLANNED
PARENTHOOD OF TENNESSEE AND
NORTH MISSISSIPPI, on behalf of itself, its
physicians and staff, and its patients;
KNOXVILLE CENTER FOR
REPRODUCTIVE HEALTH, on behalf of
itself, its physicians and staff, and its patients;
FEMHEALTH USA, INC., d/b/a CARAFEM,
on behalf of itself, its physicians and staff, and
its patients; DR. KIMBERLY LOONEY, on
behalf of herself and her patients; and DR.
NIKKI ZITE, on behalf of herself and her
patients,

Plaintiffs,

v.

HERBERT H. SLATERY III, Attorney General
of Tennessee, in his official capacity; LISA
PIERCEY, M.D., Commissioner of the
Tennessee Department of Health, in her official
capacity; RENE SAUNDERS, M.D., Chair of
the Board for Licensing Health Care Facilities,
in her official capacity; W. REEVES
JOHNSON, JR.,M.D., President of the
Tennessee Board of Medical Examiners, in his
official capacity; HONORABLE AMY P.
WEIRICH, District Attorney General of Shelby
County, Tennessee, in her official capacity;
GLENN FUNK, District Attorney General of
Davidson County, Tennessee, in his official
capacity; CHARME P. ALLEN, District
Attorney General of Knox County, Tennessee,
in her official capacity; and TOM P.
THOMPSON, JR., District Attorney General for
Wilson County, Tennessee, in his official
capacity,

Defendants.

CIVIL ACTION
CASE NO. 3:20-cv-00501
JUDGE CAMPBELL

**MEMORANDUM IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

On July 24, 2020, this Court issued a broad preliminary injunction prohibiting Defendants from enforcing two recently enacted abortion regulations that further significant state interests, including protecting and respecting the life of unborn children, preventing fetal pain, promoting human dignity, protecting the integrity of the medical profession, and preventing discrimination. (D.E. 41, 42.) Those regulations—Tenn. Code Ann. §§ 39-15-216 and -217—limit the time periods within which abortions may be performed and prohibit physicians from performing abortions when they know the abortion is being sought because of the unborn child's sex, race, or Down syndrome diagnosis. Defendants have appealed the preliminary injunction. (D.E. 46.) They now move under Fed. R. Civ. P. 62(d) for a stay of the injunction pending appeal. A stay is warranted, particularly to the extent the injunction bars enforcement of Section 217, because Defendants will be able to establish on appeal that this Court erred in holding that Section 217 and the medical-emergency affirmative defenses are unconstitutionally vague and in failing to narrowly tailor the injunction.

## BACKGROUND

Sections 216 and 217 were part of a comprehensive set of abortion regulations that passed the General Assembly with overwhelming support in 2020. *See* 2020 Tenn. Pub. Acts, ch. 764. Section 216—the gestational-age provisions—makes it a crime for a person to "perform or induce, or attempt to perform or induce, an abortion upon a pregnant woman whose unborn child has a fetal heartbeat" or is 8, 10, 12, 15, 18, 20, 21, 22, 23, or 24-weeks gestational age or older. *Id.* § 39-15-216(c)(1)-(12).[1] Section 217—the non-discrimination provision—makes it a crime for a

---

[1] It is also a crime to perform or attempt to perform an abortion at 6-weeks gestational age unless the

1

person "to perform or induce, or attempt to perform or induce, an abortion upon a pregnant woman if the person knows that the woman is seeking the abortion because of" the race or sex of the unborn child or "because of a prenatal diagnosis, test, or screening indicating Down syndrome or the potential for Down syndrome in the unborn child." Tenn. Code Ann. § 39-15-217(b)-(d).

Sections 216 and 217 both provide that "it is an affirmative defense to criminal prosecution for a violation of a provision of this section that, in the physician's reasonable medical judgment, a medical emergency prevents compliance with the provision." Tenn. Code Ann. § 39-15-217(e)(1); *see also* Tenn. Code Ann. § 39-15-216(e)(1). The affirmative defenses incorporate the definition of "medical emergency" from Tenn. Code Ann. § 39-15-211. *See id.* §§ 39-15-216(a)(4), 39-15-217(a)(3). Under that definition, "[m]edical emergency' means "a condition that, in the physician's good faith medical judgment, based upon the facts known to the physician at the time, so complicates the woman's pregnancy as to necessitate the immediate performance or inducement of an abortion in order to prevent the death of the pregnant woman or to avoid a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman that delay in the performance or inducement of the abortion would create." *Id.* § 39-15-211(a)(3).

Plaintiffs, all of whom are abortion providers, sought a preliminary injunction to prevent Defendants from enforcing Sections 216 and 217. (D.E. 1, PageID # 32.) Plaintiffs alleged that the provisions violate their patients' Fourteenth Amendment rights by "prohibiting pre-viability abortions" and "failing to include valid medical emergency exceptions." (D.E. 1, PageID # 30-

---

physician "affirmatively determines and records in the pregnant woman's medical record" that the unborn child does not have a fetal heartbeat. Tenn. Code Ann. § 39-15-216(c)(2).

31.) Plaintiffs further alleged that Section 217 and the medical-emergency affirmative defenses in both Sections 216 and 217 are unconstitutionally vague. (D.E. 1, PageID # 31.)

This Court granted a preliminary injunction prohibiting Defendants from enforcing Sections 216 and 217 in their entirety. (D.E. 42, PageID # 769.) This Court "f[ound] it unnecessary to address Plaintiffs' argument that Section 217 operates as an unconstitutional ban on pre-viability abortions." (D.E. 31, PageID # 758-59.) Instead, this Court held that Plaintiffs were likely to succeed on their claim that Section 217 is unconstitutionally vague. (*Id.* at PageID # 759-61.) This Court held that Plaintiffs "ha[d] shown a likelihood of success on the merits of their claim that Section 216 violates long-standing Supreme Court precedent prohibiting bans on pre-viability abortions that this Court is bound to follow." (*Id.* at PageID # 757.) Finally, this Court held that Plaintiffs were likely to succeed on their claim that the medical-emergency defenses are unconstitutionally vague "[u]nless and until the Sixth Circuit overturns its decision in" *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 205 (6th Cir. 1997). (*Id.* at PageID # 766.)

## ARGUMENT

Courts consider four factors in determining whether to stay an injunction pending appeal: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020) (quoting *In re Flint Water Cases*, 960 F.3d 820, 825 (6th Cir. 2020)). When, as here, the State is the moving party, "its own potential harm and the public interest merge into a single factor." *Id.* The factors are "not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Serv.*

3

*Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam)). "[I]n the case of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (quoting *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc)).

To prevail on appeal, Defendants must establish that the preliminary injunction was an abuse of discretion. *See Serv. Employees Int'l Union Local 1*, 698 F.3d at 343. The decision whether to grant a preliminary injunction is guided by the same four factors as the decision whether to grant a stay pending appeal—"likelihood of success on the merits, irreparable harm to the moving party, harm to other parties, and the public interest." *Id.* at 344. Whether a party is likely to succeed on the merits is a legal question, and a court "necessarily abuses its discretion" when it commits a legal error. *Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 847 (6th Cir. 2017).

A preliminary injunction is "an extraordinary and drastic remedy" that should never be "awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (internal quotation marks omitted). "[W]hen confronting a constitutional flaw in a statute," a court should strive to "limit the solution to the problem" by either "enjoin[ing] only the unconstitutional applications of a statute while leaving its other applications in force" or "sever[ing] its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006).

I.     **Defendants Are Likely to Succeed on Appeal.**

Defendants are entitled to a stay pending appeal because this Court committed legal error— and therefore necessarily abused its discretion—when it held that Plaintiffs are likely to succeed on their constitutional claims.

## A.     The non-discrimination provision is not unconstitutionally vague.

Defendants are likely to succeed on appeal because Section 217—the non-discrimination provision—is not unconstitutionally vague.  A law "criminalizing certain abortion procedures will not be unconstitutionally vague if it 'provides doctors of ordinary intelligence a reasonable opportunity to know what is prohibited, sets forth relatively clear guidelines as to prohibited conduct, and provides objective criteria to evaluate whether a doctor has performed a prohibited procedure.'"  *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 503 (6th Cir. 2012) (cleaned up) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)).  "Given the constraints of the English language, a law need not contain 'meticulous specificity' to avoid constitutional infirmity."  *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).  "Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid."  *Rose v. Locke*, 423 U.S. 48, 49 (1975).

This Court held that the terms "because of" and "knows" in Section 217 are unconstitutionally vague because the challenged statute does not define those terms, notwithstanding that those phrases have well-accepted meanings in both legal and common parlance.  (D.E. 41, PageID # 760, 761.)  That holding is contrary to Sixth Circuit precedent.  The Sixth Circuit has held that "[w]hen the common meaning of a word provides adequate notice of the prohibited conduct, the statute's failure to define the term will not render the statute void for vagueness."  *United States v. Narney*, 364 F.3d 843, 844-45 (6th Cir. 2004).  That is because terms that are "commonly used in both legal and common parlance" usually are "sufficiently clear so that a reasonable person can understand [their] meaning," even if the statute does not define them. *Platt v. Bd. of Comm'rs on Grievances and Discipline of Ohio Supreme Court*, 894 F.3d 235, 247

5

(6th Cir. 2018) (quoting *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 798 (6th Cir. 2005) (en banc)); *see also United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996).

The phrase "because of" is "commonly used in both legal and common parlance" and thus is not unconstitutionally vague. *Deja Vu*, 411 F.3d at 798. The U.S. Supreme Court, the Sixth Circuit, and the Tennessee courts have all recognized that the statutory phrase "because of" incorporates the "simple and traditional standard of but-for causation." *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1740 (2020) (internal quotation marks omitted); *see also Burrage v. United States*, 571 U.S. 204, 213 (2014) (noting the Court's "insistence" on interpreting "because of" and similar terms to mean "but-for causality"); *United States v. Miller*, 767 F.3d 585, 591-92 (6th Cir. 2014) (explaining that the "the Supreme Court has insisted that statutes using the term 'because of' require a showing of but-for causality" and that the Sixth Circuit "has said the same thing" (some internal quotation marks omitted)); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 440 (Tenn. Ct. App. 2015) (construing "because of" in Tennessee Human Rights Act to "require but for causation"), *perm. app. denied* (Tenn. Mar. 23, 2016).

Since the phrase "because of" in Section 217 carries this common and well-accepted meaning, abortion providers need not guess whether that provision will "apply where the prohibited reason is the motivating reason, a significant factor, or one of several reasons." (D.E. 41, PageID # 760.) It applies when the prohibited reason is the but-for reason for seeking the abortion.

Nor is the word "knows" vague. The Tennessee General Assembly has provided a definition for "knowing" that applies throughout Title 39 "unless the context provides otherwise." Tenn. Code Ann. § 39-11-106(a). A person acts "knowingly with respect to the conduct or to

6

circumstances surrounding the conduct when the person is *aware* of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-106(a)(22) (emphasis added).[2]  And Tennessee courts have held that proof of knowledge requires proof of "*actual knowledge*," not merely constructive knowledge.  *State v. Pendergrass*, 13 S.W.3d 389, 394 (Tenn. Crim. App. 1999).

This Court reasoned that "requiring the physician to be 'aware' of the intent of the patient does not cure the vagueness of the statute" because the language of Section 217 is "imprecise." (D.E. 41, PageID #761.)  But Section 217 uses the term "knows," and that term is hardly imprecise. Even if "knowingly" were not already defined in section 29-11-106(a), no one would need to guess at its definition because the term is ubiquitous in state and federal criminal law and has a well-settled meaning.  *See, e.g.*, *United States v. Halter*, 259 Fed. Appx. 738, 740 (6th Cir. 2008) (rejecting vagueness challenge to child pornography statute because "[t]he meaning of the term 'knowingly' is well-settled"); *United States v. Woods*, 730 F. Supp. 2d 1354, 1367 (S.D. Ga. 2010) ("[T]he term 'knowingly' has a well-settled meaning."); *United States v. Lantz*, No. CR-2-08-015, 2009 WL 1107708, *3 (S.D. Ohio Apr. 22, 2009) ("The meaning of the term 'knowingly' is well-settled.").

Moreover, even if this Court were correct that the terms "because of" or "knowingly" are imprecise because Section 217 does not define them, that conclusion should not have ended its vagueness analysis.  The Supreme Court has made clear that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (internal quotation marks omitted); *see also United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005).  At the very

---

[2]  Tennessee's Pattern Criminal Jury Instructions similarly provide that "[a] person acts 'knowingly' if that person acts with an awareness . . . that a particular circumstance exists."  Tenn. Pattern Jury Instructions—Criminal 2.09(2).

least, the well-accepted meanings of "because of" and "knowingly" discussed above are reasonable constructions of those terms that this Court could and should have adopted.

This Court also found it problematic that "Section 217 requires an individual to know the motivations underlying the action of *another* person." (D.E. 41, PageID # 761.) But criminal liability often turns on what the defendant knew about the mental state of another person. In Tennessee, for example, a person is guilty of "facilitation of a felony, if, *knowing that another intends to commit a specific felony*, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (emphasis added). A person can be convicted of rape if "sexual penetration is accomplished without the consent of the victim and *the defendant knows or has reason to know at the time of the penetration that the victim did not consent*," *id.* § 39-13-503(a)(2) (emphasis added), or if "[t]he defendant *knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless*," *id.* § 39-13-503(a)(3) (emphasis added). And the crime of assisted suicide requires proof of "[a]ctual knowledge that the *other person intends to bring about such person's own death*." Tenn. Code Ann. § 39-13-216(a)(3)(A) (emphasis added). None of these statutes has been held unconstitutionally vague.

To be sure, it might be difficult to determine in some cases what a person knew about the mental state of another, but that is a problem of proof that is addressed "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *United States v. Williams*, 553 U.S. 285, 305-06 (2008). As the Supreme Court has explained, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306. Here, Section 217 makes sufficiently clear what a prosecutor must prove: that a physician

8

knew (i.e., was actually aware) that an abortion was being sought because of (i.e., would not have been sought but for) the unborn child's sex, race, or Down syndrome diagnosis. Whether a physician acted with the requisite knowledge "is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Id.* And that determination is one that courts and juries are well equipped to make. *See id.* (noting that "courts and juries every day pass upon knowledge, belief and intent" (quoting *Am. Comm'ns Ass'n v. Douds*, 339 U.S. 382, 411 (1950)). This Court reasoned that Section 217 is vague because it "impermissibly delegates the task of answering [certain] questions to law enforcement officers, prosecutors, and the courts or juries." (D.E. 41, PageID # 760.) But it is not impermissible to allow courts and juries to determine whether the proffered evidence establishes knowledge beyond a reasonable doubt. "Whether a person acted 'knowingly' is a question of fact for the jury." *State v. Pruitt*, 415 S.W.3d 180, 205 (Tenn. 2013).

The Sixth Circuit's decision in *United States v. Paull*, 551 F.3d 516, 525 (6th Cir. 2009), is instructive. There, the defendant challenged the child pornography statute under which he was convicted as unconstitutionally vague because he "lack[ed] the capacity to know whether the charged items contain[ed] actual minors or virtual images of simulated child pornography." *Id.* at 526. Quoting *Williams*, the Sixth Circuit explained that "[s]uch an inability to determine whether a crime has been committed 'is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.'" *Id.* "Like the drug messenger arguing the substance he possessed was not real drugs, [the defendant's] refuge from illegal prosecution [was] not the constitution but putting the government to its burden to prove that he possessed child pornography." *Id.* at 526. So too here. If Plaintiffs' concern is that they lack the capacity to know a woman's reasons for seeking an abortion, their "refuge" is that they cannot be convicted absent

9

proof beyond a reasonable doubt that they had such knowledge.

In rejecting Defendants' argument that "the term 'knows' . . . is a scienter requirement" that alleviates any vagueness concerns (D.E. 41, PageID # 761), this Court was concerned that the term "knows" will force physicians to "make judgments about the state of mind of a patient" or subject them "to a loss of liberty if [they] reach[] the 'wrong' conclusion." (*Id.*) But, to the contrary, the term "knows" ensures that criminal liability will be imposed only when a physician subjectively knows that the abortion is being sought for a prohibited reason. A physician need not guess or speculate about a woman's motives. If the physician does not *actually know* those motives, he or she will not risk criminal lability by performing the abortion. The term "knows" thus "alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (cleaned up) (quoting *Gonzales*, 550 U.S. at 149); *see also Planned Parenthood Sw. Region*, 696 F.3d at 505 (noting that "risk of uncertainty" was "cured by the scienter provisions," which forbade penalty absent knowledge that a requirement was being violated).

Finally, Section 217 does not, as this Court concluded, implicate concerns about arbitrary enforcement. (D.E. 41, PageID # 759.) Because Plaintiffs are bringing a pre-enforcement challenge, "no evidence has been, or could be, introduced to indicate whether the [law] has been enforced in a discriminatory manner." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982). And "the speculative danger of arbitrary enforcement does not render" a law void for vagueness. *Id.*

**B.      The medical-emergency affirmative defenses are not unconstitutionally vague.**

This Court also held that Plaintiffs are likely to succeed on their vagueness challenge to the medical-emergency affirmative defenses. It found that the defenses are unconstitutionally

vague under the Sixth Circuit's decision in *Voinovich*, 130 F.3d 187, because they include both an objective "reasonable medical judgment" standard and a subjective "good faith" standard. (D.E. 41, PageID # 764-66.) But the medical-emergency *affirmative defenses* here are easily distinguishable from the medical-necessity *exception* at issue in *Voinovich*. The exception that was challenged as vague in *Voinovich* was part of the definition of the crime. *See* Ohio Rev. Code Ann. § 2919.17(A)(1) (2010).[3] The provisions challenged here, by contrast, are affirmative defenses that the defendant must prove by a preponderance of the evidence. *See* Tenn. Code Ann. § 39-11-204.

The void-for-vagueness doctrine is concerned with whether a "penal statute defin[es] the criminal offense with sufficient definiteness." *United States v. Lopez*, 929 F.3d 783, 784 (6th Cir. 2019) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Sections 216 and 217 satisfy that standard because they clearly define the conduct that constitutes the criminal offense. Because the medical-emergency affirmative defenses are not part of the definitions, any vagueness in those provisions does not implicate the constitutional void-for vagueness doctrine. *See United States v. Christie*, 825 F.3d 1048, 1065 (9th Cir. 2016) (rejecting vagueness challenge to affirmative defense

---

[3] The provision at issue in *Voinovich*, which was subsequently amended, provided in relevant part that:

> (A) No person shall purposely perform or induce or attempt to perform or induce an abortion upon a pregnant woman if the unborn human is viable, unless either of the following applies:

> (1) The abortion is performed or induced or attempted to be performed or induced by a physician, and that physician determines, in good faith and in the exercise of reasonable medical judgment, that the abortion is necessary to prevent the death of the pregnant woman or a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman.

Ohio Rev. Code Ann. § 2919.17(A)(1) (2010).

11

because there was "no authority for the proposition that the Fifth Amendment can be used to invalidate a prosecution under a clear criminal law, simply because the law is subject to an affirmative defense that is 'vague'").

This Court also concluded that the alleged vagueness in the affirmative defenses could "not be remedied by" importing a scienter requirement under Tenn. Code Ann. § 39-11-301(b), (c) because "Defendants [had] not explain[ed] how the incorporation of 'intent, knowledge, or recklessness' would work where the statute looks both to a physician's 'good faith medical judgment' on the one hand, and yet requires that medical judgment to be 'reasonable' as measured by others, on the other hand." (D.E. 41, PageID # 765.)

But any vagueness could in fact be cured by incorporation of a minimum "culpable mental state" under Section 39-11-301. Incorporation of the minimum standard of recklessness would simply prevent criminal liability from attaching when a physician has determined in good faith that a medical emergency existed and did not act recklessly in doing so. In practice, that standard is unlikely to conflict with the existing reasonableness requirement because a person is "reckless" when he "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist," where the risk is of "such a nature and degree that its disregard constitutes a gross deviation from the *standard of care that an ordinary person would exercise* under all the circumstances as viewed from the accused person's standpoint." Tenn. Code Ann. § 39-11-302(c) (emphasis added).

Even if the medical-emergency affirmative defenses are unconstitutionally vague under *Voinovich*, the proper remedy for that constitutional violation is *not* enjoining the application of Sections 216 and 217 in their entirety. Rather, the proper remedy is either (1) severance of the allegedly vague language or (2) a narrow injunction prohibiting application of Sections 216 and

12

217 only to abortions involving medical emergencies. *Ayotte*, 546 U.S. at 328-29; *see also Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 626 (6th Cir. 2018).

"Whether a portion of a state's statute is severable is determined by the law of that state." *Byrd*, 883 F.3d at 626 (quoting *Cincinnati Women's Servs., Inc. v. Taft*, 468 F.3d 361, 371 (6th Cir. 2006)). "In Tennessee, 'the doctrine of elision allows a court, under appropriate circumstances when consistent with the expressed legislative intent, to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective.'" *Id.* (brackets omitted) (quoting *State v. Tester*, 879 S.W.2d 823, 830 (Tenn. 1994)). Although Tennessee's general severability statute, Tenn. Code Ann. § 1-3-110, "does not automatically make [the doctrine of elision] applicable to every situation, . . . when a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted, then elision of the unconstitutional portion is appropriate." *State v. Crank*, 468 S.W.3d 15, 29 (Tenn. 2015) (internal quotation marks omitted).

Here, any unconstitutional vagueness in the medical-emergency exceptions is properly remedied by eliding the term "reasonable" from Tenn. Code Ann. §§ 39-15-216(e)(1) and (e)(2)(a) and 39-15-217(e)(1) and (e)(2)(a). With "reasonable" elided, the affirmative defenses would apply so long as the physician makes a good-faith determination that a medical emergency exists, regardless of the objective reasonableness of that determination. *Cf. Belle Maer Harbor v. Charter Tp. of Harrison*, 170 F.3d 553, 559 (6th Cir. 1999) (holding that proper remedy for unconstitutional vagueness was to "sever" the problematic language where ordinance contained severability clause); *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 533 (Tenn. 1993) (applying "doctrine of elision" to "eliminate [unconstitutionally vague] term" from the challenged statute rather than invalidating it).

13

The Tennessee legislature undoubtedly would have enacted Sections 216 and 217 without including the term "reasonable" in the affirmative defenses. Both sections contain broad severability provisions indicating that "[i]f any provision or provisions of this section or the application thereof to any person, circumstance, or period of gestational age is found to be unenforceable, unconstitutional, or invalid by a court of competent jurisdiction, the same is hereby declared to be severable and the remainder of the section shall remain effective," and that the General Assembly "would have enacted this section and each of its provisions" even if a provision or application was later held unconstitutional. Tenn. Code Ann. § 39-15-216(h); *see also* § 39-15-217(i). These severability provisions "evidence an intent on the part of the legislature to have the valid parts of the statute in force if some other portion of the statute has been declared unconstitutional." *Gibson Cty. Special Sch. Dist. v. Palmer*, 691 S.W.2d 544, 551 (Tenn. 1985).

Moreover, elision of the term "reasonable" from the medical-emergency affirmative defenses would leave intact "a complete law capable of enforcement and fairly answering the object of its passage." *Id.* The core prohibitions of Sections 216 and 217 are completely separate from the affirmative defenses and would remain unchanged. And even without the term "reasonable," the affirmative defenses remain functional and effective. Indeed, the medical-emergency exceptions in other Tennessee abortion regulations require only a good-faith determination, regardless of reasonableness. *See* Tenn. Code Ann. § 39-15-202(f)(1) (defining "medical emergency" in waiting-period law by reference to "the physician's good faith medical judgment"); *id.* § 39-15-211(3) (defining "medical emergency" for purposes of Sections 211 and 212 by reference to the "physician's good-faith medical judgment, based upon the facts known to the physician at the time").

Alternatively, if elision is not appropriate, only the unconstitutional applications of

14

Sections 216 and 217 should be enjoined. *See Ayotte*, 546 U.S. at 328-29. Any vagueness in the medical-emergency affirmative defenses would render Sections 216 and 217 unconstitutional only as applied to abortions that are necessary to protect the life or health of the mother. Other applications of those provisions should not be enjoined. The Sixth Circuit took exactly this approach in *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502 (6th Cir. 2006). There, the court determined that the plaintiffs in that case were likely to succeed on "their claim that [an Ohio abortion law] was unconstitutional because it lack[ed] a life or health exception," but it vacated the "broad preliminary injunction entered by the district court . . . insofar as it prohibit[ed] constitutional applications" of the law. *Id.* at 518.

### C. The non-discrimination provision does not violate the right to abortion.

Since the Court did not "address Plaintiffs' argument that Section 217 operates as an unconstitutional ban on pre-viability abortions" (D.E. 41, PageID # 759), the injunction does not rest on any holding that Section 217 violates the right to abortion. Thus, if this Court concludes that Defendants are likely to prevail on appeal on the vagueness issues, it should stay the injunction of Section 217 because there is no alternative holding that would support the injunction.

Nor have Plaintiffs established a likelihood of success on their claim that Section 217 operates as an unconstitutional ban. As this Court noted, the Sixth Circuit vacated a panel opinion that held Ohio's similar non-discrimination provision unconstitutional, and the en banc Court will soon rule on that question. (D.E. 41, PageID # 758 (citing *Preterm-Cleveland v. Himes*, 940 F.3d 318, 320 (6th Cir. 2019).) As explained in Defendants' preliminary injunction briefing (*see* D.E. 27, PageID # 332-40), Section 217 is not a ban on pre-viability abortions because women remain able to obtain an abortion for reasons other than the sex, race, or Down syndrome diagnosis of the child or if they do not disclose a prohibited reason to the physician. And Section 217 satisfies the

undue burden standard because Plaintiffs have not established that any women—let alone a large fraction of those affected by the provision—would be substantially hindered from obtaining an abortion.

At the very least, this Court should grant a partial stay of the injunction of Section 217 to allow the State to continue to enforce that provision either with the term "reasonable" elided from the medical-emergency affirmative defense or as applied to abortions not involving medical emergencies.

**D.    The gestational-age provisions do not violate the right to abortion.**

This Court concluded that "Plaintiffs have shown a likelihood of success on the merits of their claim that Section 216 violates long-standing Supreme Court precedent prohibiting bans on pre-viability abortions that this Court is bound to follow." (D.E. 41, PageID#  757.)  But that conclusion rested on a misunderstanding of Defendants' argument as to why Section 216 does not constitute a ban on pre-viability abortions.  It is *not* Defendants' position that "as long as a woman makes the *decision* to have an abortion *before* a fetal heartbeat is heard, . . . the abortion provider would not be prohibited from *performing* the abortion before viability if the patient has announced, perhaps before she learns she is pregnant, that she has made the decision to terminate her pregnancy." (D.E. 41, PageID # 757.)  Rather, Defendants' position is that the gestational-age provisions—particularly the later ones—do not "ban" pre-viability abortions because women remain able to obtain a pre-viability abortion at an earlier gestational age.  As Defendants explained in their earlier briefing, nearly half of abortions in Tennessee already occur before 8-weeks gestational age, and an overwhelming majority (86%) already occur before 12 weeks.  (D.E. 27, PageID # 348.)   The gestational-age provisions do not "ban" pre-viability abortions because women would remain able to make the decision to abort—and to actually receive an abortion—

16

before the applicable limits.

Because this Court nevertheless concluded that Section 216 is a "ban" on pre-viability abortions, it did not consider whether the gestational-age provisions satisfy the undue burden standard. As Defendants have explained, Plaintiffs cannot establish, as they must, that any of the gestational-age provisions—particularly those that apply after 10 weeks—poses a substantial obstacle to abortion access for a "large fraction" of affected women. (D.E. 27, PageID # 349.) This Court therefore erred as a matter of law—and thus abused its discretion—by enjoining Section 216 in its entirety.

## II. The Equities Weigh in Favor of a Stay.

In weighing the equities, this Court improperly discounted the harm to the State and the public interest that comes from broadly enjoining the enforcement of laws enacted with overwhelming support by the elected representatives of the citizens of Tennessee. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).

On the other hand, this Court placed too much weight on the potential harm to Plaintiffs and their patients. The harms Plaintiffs allege in this pre-enforcement posture—particularly with respect to Section 217—are speculative and do not justify the broad facial relief the Court granted. *See D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) ("To merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). If any of the harms Plaintiffs allege come to pass, they may seek as-applied relief at

17

that time. *See Gonzales*, 550 U.S. at 168.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court stay the preliminary injunction prohibiting enforcement of Sections 216 and 217 pending Defendants' appeal.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
Assistant Attorney General
Public Interest Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-2408
BPR No. 029362
Alex.rieger@ag.tn.gov

/s/Charlotte Davis
CHARLOTTE DAVIS
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 532-2500
BPR No. 034204
Charlotte.davis@ag.tn.gov

/s/ Edwin Alan Groves, Jr.
EDWIN ALAN GROVES, JR.
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
(615) 741-2850
BPR No. 036813
Alan.groves@ag.tn.gov

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Memorandum has been served on the following counsel of record through the Electronic Filing System on this 21st day of August, 2020:

Thomas H. Castelli
American Civil Liberties Union
Foundation of Tennessee
P.O. Box 12160
Nashville, TN 37212
Tel: (615) 320-7142
tcastelli@aclu-tn.org

Jessica Sklarsky
Rabia Muqqadam
Francesca Cocuzza
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Tel: (917) 637-3600
Fax: (917) 637-3666
jsklarsky@reprorights.org
rmuqqadam@reprorights.org
fcocuzza@reprorights.org

Susan Lambiase
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
Tel: (212) 261-4405
Fax: (212) 247-6811
susan.lambiase@ppfa.org

Anjali Dalal
Andrew Beck
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
adalal@aclu.org
abeck@aclu.org

/s/*Alexander S. Rieger*
ALEXANDER S. RIEGER

19

20