IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS CENTER FOR REPRODUCTIVE HEALTH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HERBERT H. SLATERY III, et al., <br><br> Defendants. | CIVIL ACTION <br><br> CASE NO. 3:20-cv-00501 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL

Defendants' Motion to Stay the Injunction Pending Appeal (the "Motion") asks this Court to find that it committed legal error and conclude precisely the opposite of what it correctly held in blocking enforcement of patently unconstitutional abortion bans. Dkt. # 48 ("Defs.' Mot."). Defendants' rehashed arguments—raised nearly a month after the Court's preliminary injunction order—present no reason for the Court to stay its injunction. As the Court's Preliminary Injunction Opinion ("PI Order") reflects, the "Cascading Bans" and the "Reason Bans" (together, the "Bans") are unconstitutional under longstanding Supreme Court and Sixth Circuit precedent for several reasons. Dkt. # 41. To begin, the Reason Bans are unconstitutionally vague. Defendants' attempt to reframe the same arguments they made in their Memorandum in Response to Plaintiffs' Motion for TRO/Preliminary Injunction, Dkt. # 27 (Defs.' Resp.), cannot cure the constitutional infirmities this Court appropriately identified. Even if they did, the Reason Bans (and the Cascading Bans) unconstitutionally ban pre-viability

1

abortion and are further unconstitutional because they lack valid medical emergency exceptions. Finally, the fact that Defendants waited for almost a month to seek a stay belies any contention that they are irreparably harmed by the PI Order. For any and all of these reasons, this Court's grant of injunctive relief should not be stayed.

## BACKGROUND

The Tennessee Legislature passed Tennessee House Bill 2263 / Senate Bill 2196 (the "Act") on June 19, 2020. Plaintiffs immediately filed their Complaint, Dkt. # 1, and Motion for a Temporary Restraining Order and/or Preliminary Injunction ("PI Motion"). Dkt. # 6-7. In support of the PI Motion, Plaintiffs asserted that the Bans were unconstitutional prohibitions on pre-viability abortion, the Reasons Bans were unconstitutionally vague, and the Bans were also unconstitutional because they lack valid medical emergency exceptions. Dkt. # 7 ("Pls.' Mem."). In opposition, Defendants argued that neither of the challenged provisions were bans, but were actually regulations on abortion that constitutionally restricted abortion without unduly burdening patients, and that no part of the provisions was unconstitutionally vague. Dkt. # 27. Briefing on the PI Motion concluded on July 13, 2020 when Plaintiffs' filed their reply. Dkt. # 34.

On July 24, 2020, the Court issued the PI Order. After considering Defendants' 36-page response and over 200 pages of attached declarations and exhibits, the Court "[a]ppl[ied] binding Supreme Court precedent and the factors required for the extraordinary remedy of an injunction under Federal Rule of Civil Procedure 65" and concluded that the Bans should be enjoined in full. PI Order at 3. The Court held that Plaintiffs were strongly likely to succeed on the merits of their claims that the Cascading Bans were unconstitutional pre-viability bans, the Reason Bans were unconstitutionally vague, and the Bans were separately unconstitutional for lack of a valid

2

medical emergency exception because the Act's medical emergency affirmative defenses were unconstitutionally vague. Despite being given ample opportunity to argue their case and after declining a hearing, Defendants filed the instant Motion on August 21, 2020, asking this Court to reverse itself based on the same, but repackaged arguments this Court already rightly rejected.[1]

## ARGUMENT

"'A stay is an intrusion into the ordinary processes of administration and judicial review.'" *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 220 (6th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). In evaluating a motion to stay pending appeal, the court balances four factors: "(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies." *Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). "The first two factors . . . are the most critical." *Dodds*, 845 F.3d 217, 221 (internal citation and quotation marks omitted). "The strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue." *Baker*, 310 F.3d at 928. But, at a minimum, a movant "must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be

---

[1] To the extent Defendants' Motion raises any truly new arguments—and it does not—such arguments should have been raised previously and prejudice Plaintiffs. Allowing Defendants to raise such arguments now would be akin to allowing a movant to improperly raise new arguments on reply or for the first time at oral argument. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) ("It is impermissible to mention an issue for the first time in a reply brief, because the appellee then has no opportunity to respond.") (internal citation and quotation marks omitted); *Miami-Luken, Inc. v. Navigators Ins. Co.*, No. 1:16-CV-876, 2018 WL 3424448, at *5 n.6 (S.D. Ohio July 11, 2018).

inflicted on others if a stay is granted." *Id.* (citation omitted). As this Court found, based on robust and longstanding Supreme Court and Sixth Circuit precedent, the Bans are likely unconstitutional and their enforcement would impose immediate irreparable harm on the vast majority of patients seeking pre-viability abortion in Tennessee. Thus, Defendants cannot meet this exacting standard.

**I.     Defendants Cannot Show a Likelihood of Success on Appeal.**

This Court made no error in holding that Plaintiffs are likely to succeed on the merits of their claims that the Bans are unconstitutional, and thus Defendants' motion must be denied.

> **a.  This Court Correctly Concluded that the Reason Bans are Likely Unconstitutionally Vague.**

The Court correctly held that Plaintiffs are likely to succeed on the merits of their claim that the Reason Bans are unconstitutionally vague. Defendants' Motion attempts to breathe new life into their previously raised arguments as to why elements of the Reason Bans are not vague, but these contentions misconstrue the Court's holdings and are misplaced. Defendants' Motion only considers these elements in *isolation*, but the Court correctly concluded that the Reason Bans were unconstitutionally vague based on the imprecision of its terms *in combination*. PI Order at 33-34.

As the Court found, the Reason Bans as a whole (not as a sum of disparate pieces) do not apprise physicians of what conduct is prohibited. The statute *as a whole* reflects innumerable, non-hypothetical questions as to what conduct is criminalized, which the Court deemed could not be answered by the statute:

> Will the physician be subject to criminal sanction only where the patient explicitly states she seeks an abortion for a prohibited reason, or could the physician be arrested for providing an abortion where the patient's file or a referring physician includes a reference to a prohibited reason? Will the prohibition apply where the patient indicates a prohibited reason is the only reason she seeks an abortion, or does it apply where the prohibited reason

4

> is the motivating reason, a significant factor, or one of several reasons? Will the prohibition apply where the patient simply makes a reference to the sex of her fetus, the race of the father, or her age in one of her conversations with the physician?

*Id.* at 33-34. It is "these questions—left unanswered by [the Reason Bans]"—that render the statute unconstitutionally vague. *Id.* at 34. Defendants' piecemeal explanations about what the statute's isolated pieces could mean in other contexts are of no moment. Most telling, none of Defendants' new explanations would assist the Court, much less a physician, in answering many of the Court's questions quoted above regarding the Reason Bans' applications.

First, regarding the term "knows," Defendants argue that the term is "hardly imprecise." Defs.' Mot. at 7. Defendants point to three cases where courts found that the definition of "knowingly" in child pornography statutes was "well-settled." *Id.* at 7. While that may be true, these cases say nothing about the use of "knows" here, especially in combination with the other vague terms in the Reason Bans. PI Order at 35. Defendants again argue that this term in the Reason Bans is not vague because it demands proof of actual knowledge, and requires some awareness, Defs.' Mot. at 10, but even if these standards cured the imprecision, which they do not,[2] Defendants have admitted that knowledge can yet be proven by *circumstantial evidence*. Defs.' Resp. 29-29.

---

[2] Defendants cite two new examples purportedly showing that "knows" adds a clarifying scienter requirement into the statute that precludes a finding of vagueness, *McFadden v. United States*, 576 U.S. 186, 191 (2015), and *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 504 (6th Cir. 2012). Both cases are inapposite because they do not present instances where there was any ambiguity with respect to what a defendant needed to know to violate the statute. In *McFadden*, the Court held that the statute was "unambiguous" and, therefore, was not vague, but noted as a general matter, a scienter requirement adds clarity. 576 U.S. at 197. Similarly, in *DeWine*, the Sixth Circuit held that an "Ohio Supreme Court's explicit interpretation" of the statute had already "resolved any facial vagueness concerns [the court] might have had" making it clear "what a physician must do to comply with the Act." 696 F.3d at 504-05. The Sixth Circuit merely held that "[a]ny risk of uncertainty" associated with "other supposedly vague terms" could be cured by the knowing scienter requirement. *Id.* at 505. These cases do not

5

Second, regarding the term "because of," Defendants make a series of arguments purportedly defining the phrase. Defendants take the position that "because of" clearly means "but-for causation." Defs.' Mot. at 6. Indeed, Defendants now point to additional contexts in which courts have held that the term "because of" refers to "but-for causation." *See id.* at 6 (citing *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739-40 (Title VII); *Burrage v. United States*, 571 U.S. 204, 213 (2014) (use of "results from" in Controlled Substances Act with mention of "because of" in Title VII); *United States v. Miller*, 767 F.3d 585, 593 (6th Cir. 2014) (Hate Crimes Prevention Act); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 440 (Tenn. Ct. App. 2015) (Tennessee Human Rights Act)). But, the Court already recognized that in other contexts "because of" means but-for causation; and, the Court already concluded that even if but for causation applies here, it still would not clarify the Reason Bans' application. PI Order at 34-35.

Third, regarding a physician's obligation to intuit the reasoning of a patient, Defendants point to a handful of criminal statutes that require a defendant to know certain mental states of others. *See* Defs.' Mot. at 8 (citing examples of felony facilitation, rape, rape of a person who cannot consent, and assisted suicide). But, Defendants fail to truly grapple with what this Court determined made this statute unique—the fact that "the statute requires one individual to know the *motivations* underlying the actions of another individual." PI Order at 34 (emphasis added). The examples cited by Defendants only require a defendant to make a binary determination— does the person intend to commit a crime or not? Does a person consent or not? The Reason Bans, in contrast, require a physician to know *the reasons why* a patient is making the decision to

---

disrupt the Court's conclusion that "knows" is not a scienter requirement that adds clarity to the statute at issue here where the statute's underlying terms are vague and there is no clarity about what facts a defendant needs to know to violate the statute. PI Order at 34-35.

6

have an abortion—*not whether* the patient intends to have an abortion, *but why* they have made that decision. And, under Defendants' recent formulation, Plaintiffs would be compelled to ascertain not only whether a patient considered a particular reason, but specifically whether that decision was a "but for" cause. Defs.' Mot. at 6.

For the same reason, Defendants' citation to *United States v. Williams*, 553 U.S. 285, 306 (2008), and *United States v. Paull*, 551 F.3d 516, 525 (6th Cir. 2009), is misplaced. Both cases involved the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act, which requires the prosecution to prove that the defendant knowingly pandered or solicited child pornography. For example, in *Williams*, the Supreme Court held that the question of the defendant's belief that the material was child pornography reflected no "indeterminacy" because it posed "clear questions of fact," which required a "true-or-false determination" about the defendant's belief and not a "subjective judgment." *Id.* at 306. As stated above, the Reason Bans do not pose this kind of binary inquiry. Rather, they impose criminal liability based on physicians' subjective assessments about the but-for motivations of their *patients*. And teasing out the motivations of third-parties under Defendants' but-for causation standard is nothing like the black-and-white assessment at issue in *Williams*. As the Court has explained, but-for causation "can be a sweeping standard" because "[o]ften, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. The clarity of the "true-or-false determination" that was the lynchpin of the Court's vagueness holding in *Williams*, 553 U.S. at 306, could not be more different from a requirement that Plaintiffs discover whether a third-party's decision-making included one forbidden factor among others, which would be "enough to trigger the law," *Bostock*, 140 S. Ct. at 1739.

7

As the Court correctly held, the Reason Bans implicate both of the central concerns motivating the prohibition on vagueness. The statute does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); PI Order at 33. And, the statute also threatens "arbitrary and discriminatory enforcement" because it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108-09; PI Order at 33. Nothing in Defendant's Motion offers the Court a means to "limit[] the definition of 'know' or 'because of'" that cures the Reason Bans' vagueness. PI Order at 34.

### b. The Reason Bans Are Also Unconstitutional Pre-viability Bans.

Even if the Reason Bans were not vague, they are also unconstitutional pre-viability bans, although the Court did not reach this argument. Defendants merely refer the Court to arguments made in their response to the PI Motion in support of their position that the Reason Bans are not pre-viability bans.[3]

Defendants again argue that the Reason Bans are regulations because they prohibit abortions only if the provider "knows" the abortion is sought "because of" a prohibited reason.

---

[3] Defendants do not reiterate their arguments that the Bans meaningfully serve valid state interests. Defs.' Resp. at 15-17. In their response to the PI Motion, Defendants asserted a number of state interests to support the Bans' prohibition of pre-viability abortion, including an interest in preventing discrimination through the Reason Bans, *Id.* at 5, an interest which Defendants predict will be favorably viewed by the Sixth Circuit *en banc* in its rehearing of *Preterm-Cleveland v. Himes*, 940 F.3d 318, 320 (6th Cir. 2019), Defs.' Mot. at 15. Under longstanding Supreme Court precedent, however, the Bans are unconstitutional irrespective of the State's articulated interests, legislative findings, or submissions because they prohibit abortion prior to viability. *See* Pls.' Mem. at 14-15 & n.12. Under this binding precedent, the only question relevant to this Court's analysis is whether the Bans proscribe some pre-viability abortion care. PI Order at 28-31. Defendants concede that the Bans proscribe nearly all pre-viability care in the state and therefore must fail. Defs.' Resp. 25-27.

Defs.' Mot at 15; Defs.' Resp. 11-12. But the fact that the Reason Bans are triggered by the physician's "knowledge" does not convert the Reasons Bans into regulations. If a physician has knowledge that the patient is seeking an abortion for a forbidden reason, the Reason Bans "prohibit [that patient] from making the ultimate decision to terminate [the] pregnancy before viability." *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 879 (1992). If a physician does not know the patient's reasons, the Reason Bans are not relevant. *Id.* at 894 ("The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant."). The law applies only to patients whose physicians "know." The constitutional analysis must therefore focus on those patients, and for them, the Reason Bans are a total, unconstitutional prohibition. *Id.*

Defendants also again claim the Reason Bans are regulations because patients may access an abortion so long as they "do not disclose a prohibited reason to the physician." Defs.' Mot at 15; Defs.' Resp. 11. But the Reason Bans can still act to ban abortion even for patients who do not disclose their reasons. As Plaintiffs' declarations highlight, there are numerous ways that physicians receive information through a patient's medical record and physician referrals that would trigger the Reason Bans without disclosure by the patient. Dkt # 34-1, Looney Supp. Decl. ¶¶ 2-4; Dkt. # 8-3, Zite Decl. ¶¶ 11-13. Moreover, as Defendants admit, "knowledge" in Tennessee may be proven through circumstantial evidence. Defs.' Resp. 28-29. Under the statute's vague provisions, as the Court pointed out, a myriad of non-hypothetical situations would implicate the Reason Bans.

    c. **The Court Correctly Concluded that the Cascading Bans are Likely Unconstitutional Pre-viability Bans.**

Defendants again argue the Cascading Bans merely require a patient to receive an abortion at an earlier gestational age and are, therefore, not a ban on abortion. Defs.' Resp. 18-

9

19. But, regardless of when prior to viability a patient decides to have an abortion, "[u]nder controlling Supreme Court precedent, a woman has a right to choose to terminate her pregnancy *at any point* before viability—not just before [a certain pre-viability] gestational age." *Isaacson v. Horne*, 716 F.3d 1213, 1227 (9th Cir. 2013) (emphasis in original); *see also Casey*, 505 U.S. at 879 ("[A] State may not prohibit *any* woman from making the ultimate decision to terminate her pregnancy before viability.") (emphasis added). Defendants' time-limitation theory has been asserted and uniformly rejected in challenges to several other gestational age bans. *See Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265, 273 (5th Cir. 2019) (rejecting Mississippi's characterization of its 15-week abortion ban as a "mere regulation of the time period during which abortions may be performed," explaining that, because the law "peg[ged] the availability of abortions to a specific gestational age," it "undisputedly prevent[ed] the abortions of some non-viable fetuses"), *petition for cert. filed*, No. 19-1392 (U.S. June 15, 2020); *Isaacson*, 716 F.3d at 1227 ("The availability of abortions earlier in pregnancy does not . . . alter the nature of the burden that [a 20-week ban] imposes on a woman once her pregnancy is at or after twenty weeks but prior to viability."). The Cascading Bans require a patient seeking pre-viability care after any of the gestational age markers to "forfeit her right to choose whether to carry her pregnancy to term." *Isaacson*, 716 F.3d at 1227. That fact alone makes the Cascading Bans unconstitutional prohibitions.[4]

---

[4] In addition to arguing that the Bans are not prohibitions and should be subject to the undue burden standard, Defendants argue that the Bans do not affect a "large fraction" of women, and therefore are not facially invalid. Defs.' Mot. at 15-17. This is wrong. The Supreme Court has repeatedly held that the large-fraction analysis must focus on the population "for whom [the law] is an actual rather than an irrelevant restriction," and the denominator must be assessed on a provision-by-provision basis. *Casey*, 505 U.S. at 895; *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2320 (2016). Here, the relevant population for analyzing the 8-week ban is pregnant people seeking pre-viability abortions at or after 8 weeks; for the 10-week ban, it

10

### d. The Court Correctly Concluded that the Medical-Emergency Affirmative Defense Is Likely Unconstitutionally Vague, Dooming Both the Reason Bans and the Cascading Bans.

Defendants also make several arguments as to why the medical emergency affirmative defenses, even if vague, do not invalidate the Bans, which ignore the fact that in *Casey*, the Court held that even a criminal statute restricting abortion post-viability *must* have a valid health exception to be constitutional. 505 U.S. at 880. None of Defendants' arguments undermine the Court's well-supported conclusion that the medical emergency affirmative defenses contain conflicting standards, conflicts that cannot be remedied by importing a scienter requirement. PI Order at 35-40.

Defendants quibble about semantics, arguing that the medical emergency provision is an affirmative defense and not an exception, citing cases from other contexts where an affirmative defense does not call into question the constitutionality of the provision itself. *See* Defs.' Mot. at 11 (citing *United States v. Christie*, 825 F.3d 1048, 1065 (9th Cir. 2016)). But, unlike those contexts, a law restricting abortion may not "interfere with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health." *Casey*, 505 U.S. at 880. Under this binding precedent, the Bans must include a valid provision for medication emergencies, which is not dependent on any particular characterization of such provision. PI Order at 35-40.

Defendants argue again that the Court should have imported the standard of recklessness as a minimal "culpable mental state." Defs.' Mot. at 12. But, under Tennessee law, scienter may

---

is pregnant people seeking pre-viability abortions at or after 10 weeks; and so on. In each of these instances, the provision will deprive every person affected of their constitutional right to abortion. With respect to pre-viability bans, "there is a one hundred percent correlation between those whom the [Bans] affect[] and [their] constitutional invalidity as applied to them." *Isaacson*, 716 F.3d at 1230.

11

not be read into criminal statutes when the statute "plainly dispense[s] with a mental element"—as the Act does. Tenn. Code Ann. § 39-11-301(c); Pls.' Mem. 20-21 & n.16. Moreover, the Sixth Circuit in *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 205-06 (6th Cir. 1997), addressed this very issue. In *Voinovich*, Ohio similarly had a scienter statute analogous to Tennessee's, and recklessness was the lowest level of scienter that could be imported under it. *Id.*; *Women's Med. Prof'l Corp. v. Voinovich*, 911 F. Supp. 1051, 1086-87 (S.D. Ohio 1995), *aff'd*, 130 F.3d 187. Given the reasonableness language in Ohio's medical emergency provision, a "recklessness requirement" *could not be inferred* "without, in effect, rewriting the statute." *Voinovich*, 911 F. Supp. at 1086. The exact same is true here. The lowest level of scienter that may be imported under Tennessee's statute is recklessness, and as the Court correctly held, reading that standard into the medical emergency provisions *would conflict* with their "reasonableness" language. Tenn. Code Ann. § 39-11-301(c); PI Order at 39-40. Thus, just like in Ohio, scienter cannot be read into this law without effectively and impermissibly rewriting the statute. PI Order at 40. This belies Defendants' baseless assertion that recklessness "is unlikely to conflict with the existing reasonableness requirement." Defs.' Mot. at 12.

Defendants' last-ditch effort is to argue that the word "reasonable" may be stricken from the statute under Tennessee's doctrine of elision, or a preliminary injunction that blocks the application of the Bans only in medical emergencies. Neither of these remedies is workable or warranted.

"The doctrine of elision is not favored." *Gibson Cty. Special Sch. Dist. v. Palmer*, 691 S.W.2d 544, 551 (Tenn. 1985) (citation omitted). It applies only "if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and

12

enforceable, . . . provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage." *Id.* (internal citation and quotation marks omitted). "Otherwise, [the doctrine's] decree may be judicial legislation." *Id.* (internal citation and quotation marks omitted).

Similarly, a court's ability to craft an injunction directed only at certain applications of a statute turns on the legislature's intent. The "touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330(2006) (internal citation and quotation marks omitted); *Planned Parenthood Cincinnati Region v. Taft*, 444 F.3d 502, 515-16 (6th Cir. 2006) (citing *Ayotte*, 546 U.S. at 330) ("[A] narrow injunction prohibiting only unconstitutional applications of the statute should be employed where such an approach is *not contrary to legislative intent*.") (emphasis added).

Here, the Court cannot infer from the face of the statute that the legislature would have enacted the affirmative defense without the word "reasonable," nor can it infer that the legislature would intend to sever application of the law to medical emergencies. Rather, legislative intent more likely counsels *against* striking the term. "[A]n important canon of statutory construction counsels that a statute . . . should be interpreted to preclude any part from being inoperative, superfluous, void, or insignificant." *Fox v. Amazon.com, Inc.*, 930 F.3d 415, 423 (6th Cir. 2019) (quoting *Baker v. State*, 417 S.W.3d 428, 439 n.11 (Tenn. 2013)). To the extent we can infer legislative intent here, inclusion of the term "reasonable" appears to be precisely what the legislature meant. Other than in the Act, Tennessee's abortion code never conditions the application of a medical emergency defense or exception on the physician's reasonableness. *See, e.g.*, Tenn. Code Ann. § 39-15-202(f). This is the first and *only time* the

13

legislature has inserted this term. To assume the legislature did not intend to include it is to ignore the legislature's clear words.

Moreover, the suggestion that the Court could craft an injunction that merely precludes enforcement of the statute in medical emergencies begs the question. Who determines when there is a medical emergency that precludes enforcement? Will such a determination be made based on the physician's good faith judgment? Or will physicians only be able to seek the protection of the injunction if their determination is reasonable? To make such an injunction workable, the Court's order would necessarily have to make such a determination.

Far from granting narrow relief, the Court would be "rewrit[ing] state law to conform it to constitutional requirements" in an effort to save it. *Ayotte*, 546 U.S. at 329 (internal citation and quotation marks omitted). And, the Court "would, to some extent, substitute the judicial for the legislative department of the government." *Id.* ("[I]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside to announce to whom the statute may be applied.") (internal citations and quotation marks omitted).

## II. The Equities Do Not Favor a Stay and the State Suffers No Irreparable Harm

Defendants' claims that the threatened harms to patients are speculative or in any way outweighed by harms to Tennessee upon denial of a stay, Defs.' Mot. at 17, run contrary to the conclusions of every court to consider a pre-viability ban—even those with valid medical emergency provisions. *See* Pls. Mem. 16 nn.14-15 (citing cases). By contrast, Tennessee will suffer no harm if it is ordered not to enforce laws that are plainly unconstitutional under decades of Supreme Court precedent. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (concluding no substantial harm to city would

14

result from enjoining enforcement of ordinance, finding it "questionable" whether the government "has any 'valid' interest in enforcing" an unconstitutional law); *see also Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) (defendant "does not have an interest in enforcing a law that is likely constitutionally infirm"). The balance of harm thus weighs decisively in Plaintiffs' favor, as the Court already correctly found. PI Order at 40-41.

Indeed, Defendants' contention that the preliminary injunction irreparably harms them is belied by the fact that they waited nearly a month to move this Court for a stay. Such "[u]nreasonable delay in asserting its rights . . . undermine[s] any claim of irreparable injury to the State or of a balance of hardships tipping in its favor." *McDaniel v. U.S. Dist. Court for the Dist. of Nevada*, 127 F.3d 886, 889 (9th Cir. 1997) (citation omitted); *accord Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993) ("The Board of Elections' inexcusable delay in filing the motions here at issue severely undermines the Board's argument that absent a stay irreparable harm would result."); *cf. Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment & Mfg., Inc.*, 511 Fed. App'x 398, 405 (6th Cir. 2013) (citation omitted) ("Additionally, an unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm.").

## CONCLUSION

Plaintiffs respectfully submit that the Court should deny Defendants' Motion to Stay the Injunction Pending Appeal.

Dated: September 4, 2020

    Respectfully submitted,
    /s/ Thomas H. Castelli
    Thomas H. Castelli (No. 24849)
    American Civil Liberties Union
    Foundation of Tennessee
    P.O. Box 12160
    Nashville, TN 37212

15

Tel: (615) 320-7142
tcastelli@aclu-tn.org

*Attorney for Plaintiffs*

Jessica Sklarsky*
Rabia Muqaddam*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Tel: (917) 637-3600
Fax: (917) 637-3666
jsklarsky@reprorights.org
rmuqaddam@reprorights.org

*Attorneys for Memphis Center for Reproductive Health d/b/a Choices and Dr. Nikki Zite*

Susan Lambiase*
Planned Parenthood Federation of America
123 William St., 9th Floor
New York, NY 10038
Tel: (212) 261-4749
Fax: (212) 247-6811
susan.lambiase@ppfa.org

*Attorney for Planned Parenthood of Tennessee and North Mississippi and Dr. Kimberly Looney*

Andrew Beck*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2633
abeck@aclu.org

*Attorneys for Knoxville Center for Reproductive Health and Femhealth USA, Inc., d/b/a carafem*

*Admitted *pro hac vice.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2020 a true and correct copy of the foregoing was served on the Tennessee Attorney General's Office, counsel for all Defendants, via the Court's ECF/CM system.

Alexander S. Rieger
Assistant Attorney General
Public Interest Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Alex.rieger@ag.tn.gov

Charlotte Davis
Assistant Attorney General
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Charlotte.davis@ag.tn.gov

                                                      */s/ Thomas H. Castelli*
                                                      Thomas H. Castelli