**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: November 20, 2020

Ms. Sarah Campbell
Office of the Attorney General
of Tennessee
320 Sixth Avenue, N.
First Floor
Nashville, TN 37243

Jessica Sklarsky
Center for Reproductive Rights
199 Water Street
22nd Floor
New York, NY 10038

      Re:  Case No. 20-5969, *Memphis Ctr for Repro Health, et al v. Herbert Slatery, III, et al*
            Originating Case No. 3:20-cv-00501

Dear Counsel,

  The Court issued the enclosed Order today in this case.

                                    Sincerely yours,

                                    s/Robin Baker, Case Management Specialist for
                                    Antoinette Macon, Case Manager
                                    Direct Dial No. 513-564-7014

cc:  Ms. Brigitte Amiri
     Mr. Andrew Beck
     Mr. John J. Bursch
     Mr. Thomas Hauser Castelli
     Mr. David E. Fowler
     Ms. Lynda M. Hill
     Mr. Mathew Hoffmann
     Ms. Susan Lambiase
     Mr. Stephen Chad Meredith
     Ms. Rabia Muqaddam
     Ms. Jen Samantha D. Rasay
     Ms. Michelle Kogler Terry

Enclosure

FILED
Nov 20, 2020
DEBORAH S. HUNT, Clerk

No. 20-5969

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MEMPHIS CENTER FOR REPRODUCTIVE )
HEALTH, on behalf of itself, its physicians and )
staff, and its patients, dba Choices, et al., )
)
    Plaintiffs-Appellees, )    O R D E R
)
v. )
)
HERBERT H. SLATERY, III, Attorney General of )
Tennessee, in his official capacity, et al., )
)
    Defendants-Appellants. )

Before: SILER, CLAY, and THAPAR, Circuit Judges.

Defendants (collectively, "the State") appeal the district court's order preliminarily enjoining abortion restrictions codified at Tennessee Code Annotated §§ 39–15–216 ("Section 216") and 39–15–217 ("Section 217") pending the adjudication of plaintiffs' facial challenge to these statutes on constitutional grounds. The State moves to stay the preliminary injunction as to only Section 217 pending appeal. Plaintiffs respond in opposition and the State replies.

"In determining whether a stay should be granted . . . , we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). These factors are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the

prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id.* "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* But "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits will often be the determinative factor.'" *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam) (order) (citation omitted).

In considering whether to stay a preliminary injunction, we review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Id.* "We review 'for abuse of discretion, however, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief.'" *Id.* (citation omitted). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "An act criminalizing certain abortion procedures will not be unconstitutionally vague if it 'provides doctors of ordinary intelligence a reasonable opportunity to know what is prohibited[,] . . . sets forth relatively clear guidelines as to prohibited conduct[,] and provides objective criteria to evaluate whether a doctor has performed a prohibited procedure." *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 503 (6th Cir. 2012) (alterations and omission in original) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)). "Given the constraints of the English language, a law need not contain 'meticulous specificity' to avoid constitutional infirmity." *Id.* (quoting *Grayned*, 408 U.S. at 110). Rather, a law "must reasonably 'define[] the line between

potentially criminal conduct on the one hand and lawful abortion on the other.'" *Id.* (alteration in original) (quoting *Carhart*, 550 U.S. at 149).

Section 217 prohibits a physician from performing an abortion upon a pregnant woman if the physician "knows" that the abortion is sought "because of" the sex, race, or Down syndrome diagnosis of the unborn child. *See* Tenn. Code Ann. § 39–15–217(b)–(d). The district court concluded that this restriction is likely unconstitutionally vague because it fails to define the terms "knows" and "because of" with sufficient clarity. As the State argues, however, Title 39 elsewhere defines the term "knowing" to require "aware[ness] of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39–11–106(a)(22); *see also Carhart*, 550 U.S. at 149 ("[S]cienter requirements alleviate vagueness concerns."). And, although Title 39 does not define the term "because of," the "ordinary meaning" of this term "is 'by reason of' or 'on account of'"—in other words, "'because of' . . . incorporates the 'simple' and 'traditional' standard of but-for causation." *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739 (2020) (citation omitted). "When the common meaning of a word provides adequate notice of the prohibited conduct, the statute's failure to define the term will not render the statute void for vagueness." *United States v. Namey*, 364 F.3d 843, 844–45 (6th Cir. 2004).

Plaintiffs respond that Section 217 is nevertheless impermissibly vague because it requires a physician to discern her patient's motivations, and because Tennessee law allows proof of knowledge through circumstantial evidence. Plaintiffs also suggest that, even if the terms "knows" and "because of" are defined with sufficient clarity in isolation, their combination leaves the statute impermissibly vague as a whole. "To be sure, it may be difficult in some cases to determine whether [a statute's] clear requirements have been met." *United States v. Williams*, 553 U.S. 285, 306 (2008). "But courts and juries every day pass upon knowledge, belief, and intent—the state

of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." *Id.* (citation omitted). Moreover, "[c]lose cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.*; *see also Planned Parenthood Sw. Ohio Region*, 696 F.3d at 505–06 ("[Plaintiff]'s remaining vagueness arguments relating to specific hypothetical scenarios [] are best left to future, as-applied challenges . . . ."). Under these circumstances, a *de novo* review of plaintiffs' vagueness challenge to Section 217 weighs in favor of granting a stay.

Plaintiffs also allege that the medical-emergency affirmative defense to Section 217 is unconstitutionally vague. Under that provision, it is an affirmative defense to prosecution if, in a physician's reasonable medical judgment, a medical emergency prevented compliance with Section 217. *See* Tenn. Code Ann. § 39–15–217(e). Citing *Women's Medical Professional Corporation v. Voinovich*, 130 F.3d 187 (6th Cir. 1997), the district court determined that plaintiffs were likely to succeed on the merits of this claim because the challenged affirmative defense lacks a scienter requirement and includes both an objective and a subjective standard. But *Voinovich* dealt with exceptions in, rather than an affirmative defense to, a penal statute. *See* 130 F.3d at 203–04. An affirmative defense "is not a penal statute or anything like one." *United States v. Christie*, 825 F.3d 1048, 1064 (9th Cir. 2016) (footnote omitted). Here, as in *Christie*, plaintiffs "cite no authority for the proposition that the Fifth Amendment can be used to invalidate a prosecution under a clear criminal law, simply because that law is subject to an affirmative defense that is 'vague.'" *Id.* at 1065. A *de novo* review of this claim therefore also weighs in favor of granting a stay.

As to the remaining equitable factors, plaintiffs have not shown a likelihood of success on the merits of their vagueness challenges to Section 217.[*] On the other hand, the district court's preliminary injunction of Section 217 "subjects [the State] to ongoing irreparable harm." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Id.* (citation omitted). The equitable factors therefore weigh in favor of granting a stay.

The motion for a partial stay of the district court's preliminary injunction is **GRANTED**.

CLAY, J., dissenting.

Earlier this year, the State of Tennessee passed HB 2263, a bill written to regulate pre-viability abortions. Plaintiffs, a group of reproductive health organizations, filed in the lower court to challenge two provisions of the law, Tenn. Code Ann. § 39–15–216 ("Section 216") and Tenn. Code Ann. § 39–15–217 ("Section 217"). The first, Section 216, made performing an abortion "upon a pregnant woman whose unborn child has a heartbeat" a Class C Felony. The second, Section 217, made it a Class C Felony to perform or induce an abortion upon "a pregnant woman if the person knows that the woman is seeking the abortion because of the sex of the unborn child," "the race of the unborn child," or the "potential for Down syndrome in the unborn child." Both provisions contain a medical emergency affirmative defense for physicians providing abortions "to prevent the death of the pregnant woman or to avoid a serious risk of the substantial and irreversible impairment of a major bodily function." Tenn. Code Ann. §§ 39–15–216(a)(4); 39–15–217(a)(3). Plaintiffs sought an injunction arguing the provisions were void for vagueness and

---

[*] Plaintiffs below pressed the alternative theory that Section 217 operates as an unconstitutional ban on pre-viability abortions. The district court did not address this claim, however, and we decline to do so in the first instance here. *See Lindsay v. Yates*, 498 F.3d 434, 441 (6th Cir. 2007).

served as unconstitutional bans on pre-viability abortions, and upon review, the district court enjoined both after Plaintiffs demonstrated a significant "likelihood of success on the merits" in their claim that the law violates the Constitution. The State petitions to stay the enjoinment of Section 217, which Plaintiffs oppose.

Under Federal Rule of Appellate Procedure 8(a), we analyze four factors in deciding whether to grant a stay, including "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020). Our review is "highly deferential to the district court's decision," and ultimately, we "reverse a decision granting a preliminary injunction only if the district court 'relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Id.* Of those factors, "the likelihood of success on the merits will often be the determinative factor." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014).

The district court properly enjoined Section 217 because Plaintiffs have demonstrated a likelihood of success in proving the provision is unconstitutionally vague. A criminal law is vague if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). For cases filed on constitutional grounds, "due process provides heightened protection against vague statutes 'where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights.'" *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 341 (6th Cir. 2007).

Section 217 exposes healthcare providers to criminal liability "if the person knows that the woman is seeking the abortion because of" the sex, race, or Down syndrome diagnosis of the unborn child. To further explicate, the statute provided the following definition: to "know" means to have "aware[ness] of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39–11–106(a)(22). While that may be instructive, the law must be looked at in tandem with its secondary requirement that a physician must know a woman seeks an abortion *because of* the fetus's race, sex, or Down syndrome diagnosis. As the district court properly concluded, the two, in combination, lead to a murky standard for physicians attempting "to understand what is prohibited." *Kolender*, 461 U.S. at 357.

Women often seek reproductive care for multifaceted reasons, and they may meet with their physician on several occasions before reaching a decision to terminate a pregnancy. To establish trust, a woman may share personal stories with her doctor while she considers her options. The statute is unclear on how the state determines whether the physician understood the eventual reason for the woman's choice. Physicians may be subjected to "arbitrary and discriminatory enforcement" for discussing with their patient basic details about the woman's thoughts concerning the unborn fetus at an initial or subsequent appointment, even though the physician may not actually be "aware of the nature" or considerations undergirding his or her patient's resulting choice. *See* Tenn. Code Ann. § 39–11–106(a)(22).

Above all, the ultimate decision as to whether to terminate a pre-viability pregnancy is a woman's alone and not her physician's. The statute before us threatens to prevent physicians from engaging in even brief discussions about the woman's personal considerations without fear of prosecution, and "the uncertainty induced by the statute threatens to inhibit the exercise of [a] constitutionally protected right." *Northland Family Planning Clinic, Inc.*, 487 F.3d at 341.

Therefore, Plaintiffs have demonstrated a "likelihood of success on the merits" as to their argument that Section 217 is unconstitutionally vague, and the issuance of an injunction has not been shown to be "clearly erroneous." *DV Diamond Club of Flint, LLC*, 960 F.3d at 746.

Furthermore, Plaintiffs have correctly identified the medical emergency provision of the statute to be additionally vague. Tenn. Code Ann. § 39–15–217(e) provides a medical emergency affirmative defense where "in the physician's good faith medical judgment" there are facts complicating "the woman's pregnancy as to necessitate the immediate performance or inducement of an abortion to prevent the death of the pregnant woman or to avoid a serious risk of the substantial and irreversible impairment of a major bodily function." If charged under the criminal statute, a board of medical examiners will assess the judgment and necessity of the physician's actions. Tenn. Code Ann. § 39–15–217(h). This provision is especially troubling, considering its vague scienter requirement, or requirement "used to signify a defendant's guilty knowledge." *Cutshall v. Sundquist*, 193 F.3d 466, 475 (6th Cir. 1999). Indeed, the language in Section 217(e) and Section 217(h) is nearly identical to language invalidated in a previous case of this court, *Women's Medical Professional Corporation v. Voinovich*, 130 F.3d 187 (6th Cir. 1997), where we found a medical emergency provision containing both subjective and objective knowledge requirements unconstitutionally vague. Like in *Voinovich*, where the overturned statute required that "a physician must believe that the abortion is necessary *and* his belief must be objectively reasonable to other physicians," *id.* at 204, Section 217(e) requires "good faith medical judgment" that an abortion is necessary, even though the decision will ultimately be judged by other physicians. As a result of the uncertainty created by the statutory language, the statute is rendered unconstitutionally vague because "physicians may face liability even if they act in good faith according to their own best medical judgment." *Id.* at 204.

The majority's order, which distinguishes the medical emergency "affirmative defense" present in Section 217 from the medical emergency "exception" in *Voinovich*, is ultimately unpersuasive. It is clear that Section 217(e), whether labeled as an affirmative defense or an exception, serves as a carve out to prevent prosecution of physicians exercising "appropriate medical judgment, for the preservation of the life or health of the mother." *Voinovich*, 130 F.3d at 203. And for that reason, this court must apply the medical emergency standards of *Voinovich* in assessing whether the provision is unconstitutionally vague. Based on the language before us, Plaintiffs properly demonstrated that the medical emergency affirmative defense lacks the knowledge requirement necessary to pass constitutional muster. Accordingly, a stay of the injunction regarding this provision would be unwarranted.

In addition to Plaintiffs' void-for-vagueness claim, they have raised a valid argument that Section 217 of the Tennessee law violates long-standing doctrine in *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833 (1992). Precedent has made it supremely clear that the "[s]tate may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Id.* at 837. Tennessee may not impose an "undue burden on a woman's ability" to seek a pre-viability abortion even if Defendants proclaim interests in protecting potential life because of a fetus's race, sex, or Down syndrome diagnosis. *Id.* at 874. And since no state interests are "strong enough to support a prohibition of abortion" prior to viability, *id.* at 846, the burden imposed warrants a review of the provisions of Section 217 that regulate pre-viability abortions. If a woman seeks an abortion for a reason prohibited by the statute, a physician's refusal to provide the service will pose an "undue burden" on the woman in her effort to obtain a pre-viability abortion, a constitutionally protected choice. She may have difficulty finding another physician in her vicinity, or worse, may be unable to exercise her constitutional right in Tennessee at all.

This runs afoul of the principle holdings in *Casey*, in addition to other recent Supreme Court affirmations of a constitutional right to abortion. *See June Medical Services L.L.C. v. Russo*, 140 S. Ct. 2103 (2020); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016). In the final analysis, Defendants have identified no benefits that justify the burden imposed by the statute on the woman's right to exercise her constitutionally protected reproductive choice. For these reasons, Plaintiffs have demonstrated a likelihood of success on their claim that Section 217 operates as an unconstitutional ban on pre-viability abortions.

I would deny the Defendants' motion to stay the preliminary injunction enjoining the abortion restrictions set forth in Section 217.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk