IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS CENTER FOR REPRODUCTIVE HEALTH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HERBERT H. SLATERY III, et al., <br><br> Defendants. | CIVIL ACTION <br><br> CASE NO. 3.20-cv-00501 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

This past June, in an effort to effectively eliminate Tennesseans' ability to access abortion, the Tennessee General Assembly passed House Bill 2263/Senate Bill 2196 (the "Act"), which includes two sets of pre-viability abortion bans (the "Cascading Bans" and the "Reason Bans," together, the "Bans"). On July 24, 2020, this Court preliminarily enjoined these Bans from taking effect. Preliminary Injunction Order, Dkt. # 41 ("PI Order"). Today a split panel of the Sixth Circuit granted Tennessee's[1] request to stay this Court's July 24, 2020 preliminary injunction of the Reason Bans. Order Granting Partial Stay, Dkt. # 63 ("Stay Order"). This renewed motion respectfully asks the Court to immediately enjoin the Act's Reason Bans, which criminalize the provision of pre-viability abortion care when a patient seeks care for prohibited

---

[1] The above-captioned Defendants are herein referred to collectively as "Defendants," the "State" or "Tennessee."

1

reasons. Act §§ 39-15-217(b)-(d). As a result of the Sixth Circuit's stay, the Reason Bans have gone into effect, and Plaintiffs must turn patients away if there are indicia that the patients are seeking an abortion for a prohibited reason. Plaintiffs urgently need relief from this Court to ensure that their patients are not forced to continue their pregnancies against their will, or delay obtaining care while they determine whether they have the means to travel out of state for the care they need.

In the PI Order, the Court preliminarily enjoined the Reason Bans based on its finding that Plaintiffs were likely to succeed on their claim that the Reason Bans were unconstitutionally vague and lacked a valid medical emergency exception. PI Order at 32-40. This Court did not reach Plaintiffs' claim that the Reason Bans are also likely unconstitutional because they violate their patients' right to pre-viability abortion. PI Order at 32-33. Similarly—in granting Defendants' request for a partial stay—the Sixth Circuit only addressed Plaintiffs' vagueness claims and explicitly declined to issue any ruling with respect to Plaintiffs' claims that the Reason Bans violate patients' constitutional right to pre-viability abortion. Stay Order at 5.

As this Court previously recognized, the Reason Bans unquestionably prohibit some patients in Tennessee from obtaining constitutionally protected pre-viability abortion care. PI Order at 40. Plaintiffs are therefore likely to succeed on the merits of their claim that the Reason Bans violate the right to privacy. Indeed, enforcement of the Bans, including the Reason Bans, "immediately impact[s]" patients seeking pre-viability abortion care in Tennessee and the "time-sensitive nature of the procedure adds to that impact." *Id.* This irreparable harm "outweighs any harm to Defendants or to the public interest." *Id.* at 41. In order to preserve Plaintiffs' patients' access to pre-viability abortion pending full adjudication on the merits, Plaintiffs request that the Court act expeditiously and grant this renewed request for immediate injunctive relief based on

2

their claim that the Reason Bans violate their patients' constitutional right to pre-viability abortion.

## BACKGROUND[2]

On July 13, 2020, Governor Bill Lee signed the Act into law. The Act's Reason Bans—the subject of this renewed motion—criminalize the provision of abortion care when the provider "knows" that an abortion is being sought "because of" the race or sex of the fetus, or "a prenatal diagnosis, test, or screening indicating Down syndrome or the potential for Down syndrome." Act §§ 39-15-217(b)-(d).

The Reason Bans have no exceptions, even for rape, incest, or lethal fetal conditions—irrespective of whether the embryo or fetus is viable. The Reason Bans' only application is to pre-viability abortion care. PI Order at 5. The Reason Bans create affirmative defenses to criminal prosecution only if "in the physician's reasonable medical judgment, a medical emergency prevented compliance with the provision." Act §§ 39-15-216(e)(1), 217(e)(1).

A physician's violation of any of the Reason Bans is a Class C felony, *id.* § 39-15-217(f), imposing severe criminal penalties, including imprisonment of three to 15 years and/or a fine not to exceed $10,000. *See* Tenn. Code Ann. § 40-35-111(b)(3). Violation of any of the Reason Bans likewise subjects physicians to licensure penalties, including revocation, *see* Tenn. Code Ann. §§ 63-6-101(a)(3), 63-6-214(b); Tenn. Comp. R. & Regs. 0880-02-.12(1), and subjects health

---

[2] In the interest of efficiency, this memorandum will focus on the facts and arguments most relevant to the instant motion. However, Plaintiffs incorporate by reference the facts and arguments as recited in their June 22, 2020 Motion for Temporary Restraining Order and/or Preliminary Injunction, Dkt. # 6 ("Motion for TRO/PI"); their Memorandum of Law in Support of Motion for TRO/PI, Dkt. # 7 ("Pls.' Mem."); the supporting declarations of Dr. Kimberly Looney, Dr. Mary Norton, Dr. Nikki Zite, Corinne Rovetti, Rebecca Terrell, and Melissa Grant, Dkt. ## 8-1–8-6; their Reply in Support of Motion for TRO/PI. Dkt. # 34; and the rebuttal declarations of Dr. Kimberly Looney, Dr. Mary Norton, Dr. Stephen Ralston, and Dr. Owen Phillips, Dkt. ## 34-1–34-4.

centers licensed as ambulatory surgical treatment centers ("ASTCs") to licensure penalties, Tenn. Code Ann. § 68-11-207(a)(3); Tenn. Comp. R. & Regs. 1200-08-10-.03(1)(d); *see also* Looney Decl. ¶ 12; Rovetti Decl. ¶ 8.

## I. PROCEDURAL HISTORY

Given the Bans' immediate effective date, Plaintiffs challenged the Bans the same day the Act passed the Tennessee General Assembly and shortly thereafter moved for a TRO/PI. Plaintiffs argued that the Bans violated their patients' substantive due process rights because they proscribe pre-viability abortion care and because they lack valid medical emergency exceptions. Pls.' Mem. at 14-17. Plaintiffs also argued that it was unclear what abortion care the Reason Bans prohibit, rendering them unconstitutional for the additional reason that their vagueness violates Plaintiffs' procedural due process rights. *Id.* at 17-19.

After first granting Plaintiffs' request for a TRO, this Court entered a preliminary injunction on July 24, 2020. This Court concluded that Plaintiffs had established a strong likelihood of success on the merits of their claims that the Cascading Bans unconstitutionally proscribe pre-viability abortions, that the Bans lack valid medical emergency exceptions, and that the Reason Bans are likely unconstitutionally vague. First PI Order at 40-41. Accordingly, this Court preliminarily enjoined the Bans in full. *Id.*

On August 21, 2020, Tennessee asked this Court to stay the entirety of its preliminary injunction order pending appeal to the Sixth Circuit. Defendants Motion for Stay Pending Appeal, Dkt. ## 47-48 ("Defs.' Mot. to Stay"). This Court rightly denied this request on September 29, 2020. Order Denying Defendants' Motion for Stay Pending Appeal, Dkt. # 59 ("Order Denying Stay"). Tennessee subsequently asked the Sixth Circuit to stay this Court's injunction only with respect to the Reason Bans. App. Dkt 14. Today, a split panel of the Sixth

4

Circuit granted Tennessee's partial stay request based on its finding that Plaintiffs did not have a likelihood of success on its vagueness challenges. Stay Order at 4-5. The Sixth Circuit's order did not opine on Plaintiffs' claims that the Reason Bans unconstitutionally violate their patients' right to pre-viability abortion. Stay Order at 5.

## II. THE REASON BANS PROHIBIT PRE-VIABILITY ABORTION CARE.

As Plaintiffs' prior submissions make clear, the Reason Bans deny patients pre-viability abortion care in a wide range of circumstances. Pls.' Mem. at 9-10, 18-19. Individuals seek abortion for a multitude of deeply personal reasons. Looney Decl. ¶ 39; Rovetti Decl. ¶ 12; Terrell Decl. ¶¶ 16-17. The decision to terminate a pregnancy is motivated by a combination of diverse, complex, and interrelated factors. These factors are related to the individual's values, beliefs, culture and religion, health status and reproductive history, familial situation, and resources and economic stability. *See* Looney Decl. ¶¶ 39, 42-43; Rovetti Decl. ¶ 12; Terrell Decl. ¶¶ 16-18; Zite Decl. ¶¶ 13, 23. Whatever the reasons, each person's decision to have an abortion is unique to that person and based on one's own complex personal circumstances and values. As a result, it is often difficult, if not impossible, for another person to truly know why an individual seeks an abortion. Looney Decl. ¶ 44; Terrell Decl. ¶ 16.

Prior to performing an abortion, Plaintiffs provide counseling designed not to favor any option over another, which means they listen to, support, and provide information to the patient, without directing the course of action. Looney Decl. ¶ 40; Rovetti Decl. ¶¶ 25-28; Terrell Decl. ¶ 17. Consistent with Plaintiffs' missions and best medical practices, Plaintiffs do not require that patients disclose their reasons for seeking an abortion. Grant Decl. ¶ 22; Looney Decl. ¶ 41; Rovetti Decl. ¶ 25; Terrell Decl. ¶ 17. However, during this counseling, some of Plaintiffs' patients disclose at least some information about the considerations that have informed their

decisionmaking. Looney Decl. ¶ 41; Rovetti Decl. ¶¶ 23, 27; Terrell Decl. ¶ 17. Rovetti Decl. ¶ 23; Terrell Decl. ¶ 20. While many other patients do not, physicians also receive information that may reflect upon a patient's reason for seeking abortion care—apart from patient disclosure—through the circumstances of a patient's visit, the patient's medical record, and physician referrals. Looney Decl. ¶ 41; Looney Supp. Decl. ¶¶ 2-4; Rovetti Decl. ¶¶ 23, 27; Terrell Decl. ¶¶ 17, 20, 22; Zite Decl. ¶¶ 11-13.

Plaintiffs have treated patients who have expressed concern about their own advanced age or any possible fetal condition as a result of that age, who have received a diagnosis of Down syndrome, or who have raised concerns over the possibility of a Down syndrome diagnosis—among many other feelings these patients may express, including how the pregnancy may affect their existing children or their current life circumstances. Grant Decl. ¶ 22; Looney Decl. ¶¶ 47-48; Rovetti Decl. ¶ 23; Terrell Decl. ¶¶ 21-22; Looney Supp. Decl. ¶ 3; Zite Decl. ¶ 12. At times, Plaintiffs' patients have also raised issues relating to the race or sex of the fetus, without presenting them as "reasons" for the abortion. Grant Decl. ¶ 22; Looney Decl. ¶ 46. For example, Plaintiffs have treated patients experiencing racism from their families around a biracial relationship or who inquire about the sex of the fetus during an ultrasound. Grant Decl. ¶ 22; Looney Decl. ¶ 46; Rovetti Decl. ¶ 23; Terrell Decl. ¶ 20.

Tennessee's submissions to this Court and the Sixth Circuit only confirm Plaintiffs' fears that the Reason Bans criminalize care in myriad circumstances. Tennessee has asserted that "mere[] mentions" of prohibited reasons, Defendants' TRO/PI Response, Dkt. # 27 ("Defs.' Resp.") at 17, "without more," Defendants' Reply App., App. Dkt. # 18 ("Defs.' Reply App.") at 4-5, 8, would not support a conviction and that physicians are "under no duty to *inquire* about a patient's reasons for seeking the abortion," Defs.' Resp. at 17. Yet, Tennessee has conceded that

circumstantial evidence may be used to determine if a physician had knowledge of a prohibited reason. Defendants' Stay Reply, Dkt. # 54 ("Defs.' Stay Reply") at 2; Defs.' Reply App. at 2. As a result, Defendants *still* can only assure Plaintiffs that "*explicit[ ]*" *statements* to a physician or seen in a chart "would *most likely* support a conviction," implicitly acknowledging "closer cases could be imagined" that would necessarily expose Plaintiff physicians to harsh criminal penalties and loss of licensure if they continued to provide in such circumstances.[3] Defs.' Reply App. at 4. Consequently, unless enjoined, Plaintiffs cannot risk exposure to these harsh penalties and must cease providing pre-viability abortion care to any patient when a prohibited reason is implicitly or explicitly referenced or implicated in any way. Grant Decl. ¶¶ 19, 20, 23; Looney Decl. ¶ 49; Rovetti Decl. ¶ 24; Terrell Decl. ¶¶ 23, 26.

### III. THE REASON BANS IRREPARABLY HARM PLAINTIFFS' PATIENTS.

As soon as the Sixth Circuit lifted this Court's injunction, the Reason Bans went into effect. Plaintiffs must now cease providing abortion care whenever a prohibited reason is implicitly or explicitly referenced or implicated either through a patient disclosure, a medical file, a referring physician, or any other surrounding circumstance—lest they risk extreme criminal penalties. Grant Decl. ¶¶ 19, 20, 23; Looney Decl. ¶ 49; Rovetti Decl. ¶ 24; Terrell Decl. ¶¶ 23, 26. As a result, such patients will only be able to access care if they are able to travel out of state. However, most of Plaintiffs' patients are poor or low-income, are already parents, and struggle to access transportation, childcare, and time off work, in addition to other

---

[3] Throughout briefing in this case, Tennessee has speculated about potential workarounds for patients to receive their procedure under the Reason Bans. For example, the State posits that women can withhold information from their physicians or, if denied care at one provider, seek another. *See, e.g.*, Defs.' Stay Reply at 3. As Plaintiffs' declarations demonstrate, however, these workarounds do not salvage the constitutionality of the law—given that a host of circumstances other than a patient's disclosure can trigger the law, there will always be some patients who are denied access to care by the Reason Bans.

7

challenges they face accessing healthcare generally. These most vulnerable patients are most likely to continue their pregnancies against their will or to resort to unsafe means to terminate their pregnancies because they cannot travel out of state. Grant Decl. ¶¶ 8-9, 16, 18-19; Looney Decl. ¶¶ 30-31, 38; Rovetti Decl.¶¶ 15-20, 22; Terrell Decl. ¶ 26; Zite Decl. ¶ 24. Under any of these scenarios, Plaintiffs' patients will be tremendously harmed. Grant Decl. ¶ 19; Looney Decl. ¶ 37; Rovetti Decl.¶¶ 15, 21-22; Terrell Decl. ¶ 26. Being denied an abortion harms patients' health, their existing families, their financial and educational goals, and their ability to gain independence from abusive and unsafe circumstances. Looney Decl. ¶ 38; Rovetti Decl. ¶¶ 15,17, 19, 21-22, 29; Terrell Decl. ¶ 26; Zite Decl. ¶¶ 23-24.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARD

Plaintiffs renew their request for a temporary restraining order and/or preliminary injunction to stop the Reason Bans from causing unconstitutional physical and emotional harm to Plaintiffs' patients. In determining whether to grant such a motion, the Court must consider the following factors, all of which weigh in favor of Plaintiffs: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015) (internal quotation marks omitted and citation omitted).

## II. PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIM THAT THE REASON BANS UNCONSTITUTIONALLY PROSCRIBE PRE-VIABILITY ABORTION.

Plaintiffs have a strong likelihood of success on their claim that the Reason Bans violate the Fourteenth Amendment by prohibiting some patients from obtaining pre-viability abortion. For nearly fifty years, the Supreme Court has repeatedly and unequivocally held that, under the Due Process Clause of the Fourteenth Amendment, a state may not ban abortion prior to viability irrespective of the state's articulated interests or legislative findings. *Planned Parenthood of SE Pa. v. Casey*, 505 U.S. 833, 846, 871 (1992); *Roe v. Wade*, 410 U.S. 113, 163-64 (1973); *June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2135 (2020) (citing *Casey*) (Roberts, J., concurring) (noting that "*Casey* reaffirmed 'the most central principle of *Roe* v. *Wade*,' 'a woman's right to terminate her pregnancy before viability'"); *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2299 (2016) (reaffirming that a provision of law is constitutionally invalid if it bans abortion "before the fetus attains viability" (quoting *Casey*, 505 U.S. at 878)); *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) ("assum[ing]" the principle that, "[b]efore viability, a State 'may not prohibit any woman from making the ultimate decision to terminate her pregnancy'" (quoting *Casey*, 505 U.S. at 879)); *Stenberg v. Carhart*, 530 U.S. 914, 921 (2000) (declining to "revisit" the legal principles reaffirmed in Casey that "before 'viability . . . the woman has a right to choose to terminate her pregnancy'") (quoting *Casey*, 505 U.S. at 870)); *accord Isaacson v. Horne*, 716 F.3d 1213, 1217, 1221 (9th Cir. 2013), *cert. denied*, 571 U.S. 1127 (2014) (stating the Supreme Court has been "unalterably clear regarding one basic

9

point": "a woman has a constitutional right to choose to terminate her pregnancy before the fetus is viable").[4]

While Tennessee has previously argued that its alleged anti-discrimination interest supports the Reason Bans' prohibition of pre-viability abortion, Defs.' Resp. at 13-16; Defs.' Reply App. at 8, the only opinions the State has mustered to support this view are dissenting and concurring opinions with no precedential weight. *See, e.g.,* Defs.' Resp. at 11-12 (citing *Box v.*

---

[4] Moreover, every federal appellate court or state high court faced with a law prohibiting abortions before viability has ruled that it violates the Fourteenth Amendment and the Supreme Court has affirmed or denied certiorari in each one of those cases it has been asked to review to date. *See Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019) (striking down ban on abortions at 15 weeks with exceptions), *petition for cert. filed* (June 15, 2020) (No. 19-1392); *Jackson Women's Health Org. v. Dobbs*, 951 F.3d 246 (5th Cir. 2020) (striking down ban on abortions at 6 weeks with exceptions); *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015) (striking down ban on pre-viability abortions at 6 weeks with exceptions), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) (striking down ban on pre-viability abortions at 12 weeks with exceptions), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson*, 716 F.3d at 1217, 1231 (striking down ban on pre-viability abortions at 20 weeks with exceptions), *cert. denied*, 571 U.S. 1127 (2014); *Carhart v. Stenberg*, 192 F.3d 1142, 1151 (8th Cir. 1999) (striking down ban on "the most common procedure" used to perform abortions after 13 weeks), *aff'd*, 530 U.S. 914, 922 (2000); *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 201 (6th Cir. 1997) (same), *cert. denied*, 523 U.S. 1036 (1998); *Jane L. v. Bangerter*, 102 F.3d 1112, 1114, 1117-18 (10th Cir. 1996) (striking down ban on pre-viability abortions at 22 weeks with exceptions), *cert. denied*, 520 U.S. 1274 (1997); *Sojourner T. v. Edwards*, 974 F.2d 27, 29, 31 (5th Cir. 1992) (striking down ban on all abortions with exceptions), *cert. denied*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368-69 (9th Cir. 1992) (same), *cert. denied*, 506 U.S. 1011 (1992); *cf. DesJarlais v. State, Office of Lieutenant Governor*, 300 P.3d 900, 904-05 (Alaska 2013) (invalidating proposed pre-viability ban on all abortions with exception for "necessity"), *reh'g denied*; *In re Initiative Petition No. 395, State Question No. 761*, 286 P.3d 637, 637-38 (Okla. 2012) (invalidating proposed definition of a fertilized egg as a "person" under due process clause), *cert. denied*, 568 U.S. 978 (2012); *Wyo. Nat'l Abortion Rights Action League v. Karpan*, 881 P.2d 281, 287 (Wyo. 1994) (ruling proposed ban on abortions would be unconstitutional); *In re Initiative Petition No. 349, State Question No. 642*, 838 P.2d 1, 7 (Okla. 1992) (striking down proposed abortion ban with exceptions), *cert. denied*, 506 U.S. 1071 (1993); *accord SisterSong Women of Color Reproductive J. Collective v. Kemp*, No. 1:19-cv-02973-SCJ, 2020 WL 3958227 (N.D. Georgia July 13, 2020) (striking down ban on abortions at 6 weeks and law defining "natural person" to include embryos/fetuses), *appeal docketed*; *Robinson v. Marshall*, 415 F.Supp.3d 1053 (M.D. Ala. 2019) (enjoining near-total ban on all abortions regardless of viability).

10

*Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780, 1792 (2019) (Thomas, J., concurring); *Preterm-Cleveland v. Himes*, 940 F.3d 318, 326 (6th Cir.) (Batchhelder, J., dissenting), *opinion vacated and reh'g en banc granted*, 944 F.3d 630 (6th Cir. 2019); *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 917 F.3d 532, 536 (7th Cir. 2018) (Easterbrook, J., dissenting from denial of reh'g en banc)); *id.* 19-20 (citing *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 508 (6th Cir. 2012) (Moore, J., dissenting in part), 514, 516 (McKeague, J., concurring in part and writing for the majority in Part VI)). Accordingly, every attempt to ban pre-viability abortion based on the patient's reasons for seeking an abortion has been rejected. *See Preterm-Cleveland v. Himes*, 940 F.3d 318, 323 (6th Cir. 2019) (invalidating Ohio reason ban because a state may not prohibit abortion prior to viability regardless of the "the state's purported reason for prohibiting a woman from obtaining an abortion"), *reh'g en banc granted, opinion vacated*, 944 F.3d 630 (6th Cir. 2019); *EMW Women's Surgical Ctr. v. Beshear*, No. 3:19-cv-178-DJH, 2019 WL 1233575 (W.D. Ky. March 15, 2019) (entering a temporary restraining order against Kentucky reason ban because "[t]he Supreme Court has stated in no uncertain terms that . . . a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability."); *Reproductive Health Servs. v. Parson*, 408 F. Supp. 3d 1049, 1053 (W.D. Mo. 2019) (granting preliminary injunction against Missouri ban because "[a]bsent a hurried TRO or preliminary injunction, the prospective patient would lose the Constitutional right [to abortion] to which she is currently entitled."), *appeal filed*, No.19-2882 (argued Sept. 24, 2020); *Little Rock Family Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1275 (E.D. Ark. 2019) (granting preliminary injunction against Arkansas reason ban because the ban "clearly violates well-established Eighth Circuit and Supreme Court precedent holding that a woman may terminate her pregnancy prior to

viability, and that the State may not prohibit a woman from exercising that right solely upon the basis on which a woman makes her decision"), *appeal filed*, No. 19-2690 (argued Sept. 23, 2020); *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 265 F. Supp. 3d 859, 867 (S.D. Ind. 2017) ("[I]t is a woman's right to *choose* an abortion that is protected, which, of course, leaves no room for the State to examine, let alone prohibit, the basis or bases upon which a woman makes her choice.") (emphasis in original), *aff'd*, 888 F.3d 300 (7th Cir. 2018), *and cert. denied in part and granted in part, judgment rev'd in part on other grounds sub nom. Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019).

The central principle underlying the privacy right and liberty interests recognized in *Roe*, *Casey*, *Whole Woman's Health*, and most recently in *June Medical*, is that it is for the individual, not the State, to decide whether to terminate a pre-viability pregnancy. As the Court made abundantly clear in *Casey*:

> These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State.

505 U.S. at 851. "Nothing in the Fourteenth Amendment or Supreme Court precedent allows the State to invade this privacy realm to examine the underlying basis for a woman's decision to terminate her pregnancy prior to viability." *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018) (permanently enjoining Indiana law prohibiting abortions based solely on diagnosis or potential diagnosis of Down syndrome or other enumerated disability, or sex, race, color, national origin, or ancestry of the embryo/fetus), *cert. denied in part and granted in part, judgment rev'd in part on other grounds sub nom. Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019).

Defendants' arguments to the contrary are unpersuasive. For example, in previous submissions to this Court, Tennessee has argued that the Reason Bans are not bans because patients "remain able to obtain an abortion" for non-prohibited reasons. Defs.' Mot. to Stay at 15. That some patients may still be able to access care is irrelevant. Under decades of Supreme Court precedent, "a State may not prohibit *any* [patient] from making the ultimate decision to terminate [a] pregnancy before viability." *Casey*, 505 U.S. at 879 (reaffirming this "central holding of *Roe*") (emphasis added). Tennessee has similarly argued that patients can access care by "simply declin[ing] to disclose their reasons." Defs.' Mot. to Stay at 15; Defs.' Stay Reply at 3. This "work-around," however, is not feasible. As Plaintiffs explained *supra*, there is a wide range of circumstances that implicate the Reason Bans such that a patient's non-disclosure cannot guarantee access to care. In other words, physicians receive information that implicate the Reason Bans from patient's medical files, referring physicians, and other surrounding circumstances—regardless of a patient's disclosures. *See supra* 5-6. For this reason, Plaintiffs are unable to provide pre-viability abortion care to any patient when a prohibited reason is implicitly or explicitly referenced or implicated in any way. Grant Decl. ¶¶ 19, 20, 23; Looney Decl. ¶ 49; Rovetti Decl. ¶ 24; Terrell Decl. ¶¶ 23, 26. The Reason Bans deny some patients their constitutional right to abortion—without alternative[5]—and they are therefore likely unconstitutional.

---

[5] Tennessee has also improperly analogized the Reason Bans to the abortion method-ban at issue in *Gonzalez*, 550 U.S. 124. Defs.' Stay Reply at 3. However, Tennessee fails to acknowledge that the method-ban was only upheld because the Supreme Court found there to be "uncertainty over whether the barred procedure was ever necessary to preserve a [patient's] health" and the availability of "safe alternative[]" abortion procedures that allowed patients to still access abortion. *Gonzalez*, 505 U.S. at 166-67. Here, unlike in *Gonzalez,* for some patients there is no alternative and some patients will be denied care entirely.

### III. ABSENT AN INJUNCTION, PLAINTIFFS' PATIENTS WILL CONTINUE TO SUFFER IRREPARABLE HARM.

So long as the Reason Bans are enforceable, some of Plaintiffs' patients will be denied pre-viability abortion care. Those denied this care suffer constitutional violations that mandate a finding of irreparable harm. *Am. Civil Liberties Union Fund of Mich.*, 796 F.3d at 649. Furthermore, because the choice to have an abortion "simply cannot be postponed, or it will be made by default with far-reaching consequences," *Bellotti v. Baird*, 443 U.S. 622, 643 (1979), the presumption of irreparable harm applies with particular force where the threatened or impaired right is the fundamental right to abortion, *see, e.g.*, *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014); *Planned Parenthood of Wis., Inc. v. Van Hollen*, 738 F.3d 786, 795-96 (7th Cir. 2013). This is because, as *Roe* recognized, forcing women to carry unwanted pregnancies to term immensely harms them, including by undermining their ability to control their own futures and often by harming their existing families. 410 U.S. at 153; *see also* Looney Decl. ¶ 38; Rovetti Decl. ¶¶ 15, 21-22, 29; Terrell Decl. ¶ 26; Zite Decl. ¶¶ 23-24.

### IV. THE BALANCE OF HARMS FAVORS THE PROVISION OF INJUNCTIVE RELIEF.

Plaintiffs' patients will suffer far more serious irreparable harm while the Reason Bans are in effect than the State will suffer if the Reason Bans are preliminarily enjoined.[6]

---

[6] Because the Sixth Circuit panel majority opinion did not opine on Plaintiffs' claim that the Reason Bans violate their patients' constitutional right to pre-viability abortion, it did not consider the irreparable harm the Reason Bans impose on Plaintiffs' patients. As such, in granting the partial stay, the panel majority did not weigh this immense harm against whatever alleged harm a preliminary injunction would bring upon the state. Stay Order at 5. Moreover, this alleged harm to the state was based solely on the panel majority's finding that Plaintiffs were unlikely to succeed on the merits of their vagueness claims. To the extent this Court concludes the Reason Bans are unconstitutional for the separate reason that they violate patients' constitutional rights, this vitiates the state's claims of harm, which are based only on its interest in enforcing democratically enacted statutes that are constitutional.

Maintaining the status quo will not result in harm for the State. Rather, preliminary injunctive relief would prevent the state from enforcing plainly unconstitutional laws. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 882 F.2d 1390, 1400 (6th Cir. 1987) (finding defendants' interest in enforcing unconstitutional laws to be questionable and concluding that no substantial harm would result if enforcement is enjoined). Thus, the balance of harms weighs decisively in favor of Plaintiffs and supports this Court granting preliminary injunctive relief.

V. **THE PUBLIC INTEREST WEIGHS HEAVILY IN FAVOR OF INJUNCTIVE RELIEF.**

Enjoining the Bans serves the public interest. The Sixth Circuit has made clear that "[w]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." *Am. Civil Liberties Union Fund of Mich.*, 796 F.3d at 649 (alteration in original) (internal quotations marks and citation omitted); *accord Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016) (same). This Court has already noted, in recognizing the public interest at stake here, that "[n]either Defendants nor the public have a strong interest in enforcing an unconstitutional statute," PI Order at 41. Indeed, the only way to protect the public from any harm resulting from the Reason Bans' constitutional violations is to enjoin enforcement and "preserve the status quo pending trial." *Id.*

VI. **A BOND IS NOT NECESSARY IN THIS CASE.**

Finally, this Court should once again waive the Federal Rule of Civil Procedure 65(c) bond requirement, as it did in its July 24, 2020 decision to grant Plaintiffs injunctive relief, noting that "Defendants are unlikely to incur damages or costs." PI Order at 41. It remains true that the relief sought by Plaintiffs here will not result in monetary loss to Defendants. *See*

*Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013); *see also Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (affirming district court decision to require no bond "because of the strength of [the plaintiffs'] case and the strong public interest involved"); *Preterm-Cleveland v. Yost*, 394 F. Supp. 3d 796, 804 (S.D. Ohio 2019) (waiving bond).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Renewed Motion for Temporary Restraining Order and/or Preliminary Injunction.

Dated: November 20, 2020

Respectfully submitted,

| | |
|---|---|
| /s/Thomas H. Castelli<br>Thomas H. Castelli (No. 24849)<br>American Civil Liberties Union<br>Foundation of Tennessee<br>P.O. Box 12160<br>Nashville, TN 37212<br>Tel: (615) 320-7142<br>tcastelli@aclu-tn.org<br><br>*Attorney for Plaintiffs* | Jessica Sklarsky*<br>Rabia Muqaddam*<br>Jen Samantha D. Rasay*<br>Center for Reproductive Rights<br>199 Water Street, 22nd Floor<br>New York, NY 10038<br>Tel: (917) 637-3600<br>Fax: (917) 637-3666<br>jsklarsky@reprorights.org<br>rmuqaddam@reprorights.org<br>jrasay@reprorights.org<br><br>*Attorneys for Memphis Center for Reproductive Health d/b/a Choices and Dr. Nikki Zite* |
| Brigitte Amiri**<br>Andrew Beck*<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel: (212) 549-2633<br>abeck@aclu.org<br>bamiri@aclu.org | Susan Lambiase*<br>Planned Parenthood Federation of America<br>123 William St., 9th Floor<br>New York, NY 10028<br>Tel: (212) 261-4749<br>Fax: (212) 247-6811<br>susan.lambiase@ppfa.org |

16

*Attorneys for Knoxville Center for Reproductive Health and Femhealth USA, Inc., d/b/a carafem*

*Attorney for Planned Parenthood of Tennessee and North Mississippi and Dr. Kimberly Looney*

\*Admitted *pro hac vice*

\*\*Application for admission *pro hac vice* pending

17

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020 a true and correct copy of the foregoing was served on the Tennessee Attorney General's Office, counsel for all Defendants, via the Court's ECF/CM system.

    Alexander S. Rieger
    Charlotte Davis
    Edwin A. Groves, Jr.
    Office of the Attorney General and Reporter
    P.O. Box 20207
    Nashville, Tennessee 37202-0207
    Alex.rieger@ag.tn.gov
    Charlotte.davis@ag.tn.gov
    Alan.groves@ag.tn.gov

                                          /s/ *Thomas H. Castelli*
                                          Thomas H. Castelli